# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE DEC 2 2 2016

Fairhurst
for CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Dec 22, 2016

for SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 90419-7 |
| Petitioner, | ) | |
| v. | ) | |
| DOMINIC XAVIER BAIRD, | ) | |
| Respondent. | ) | En Banc |
| STATE OF WASHINGTON, | ) | |
| Petitioner, | ) | |
| v. | ) | |
| COLLETTE ADAMS, | ) | Filed: DEC 2 2 2016 |
| Respondent. | ) | |

MADSEN, C.J.—These consolidated cases require us to decide whether the State

can offer a driver's refusal to take a breath test under Washington's implied consent

statute, RCW 46.20.308,[1] as evidence of guilt at a criminal trial after the Supreme Court's

---

[1] The implied consent statute has been amended since the defendants in this case were arrested in 2012 and 2013. LAWS OF 2013, 2d Spec. Sess., ch. 35, § 36; LAWS OF 2013, ch. 3, § 31; LAWS OF 2012, ch. 80, § 12; LAWS OF 2015, 2d Spec. Sess., ch. 3, § 5. However, the parties cite to the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90419-7

decision in *Missouri v. McNeely*, __ U.S. __, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013) (plurality opinion).

Washington's implied consent statute facilitates law enforcement in obtaining evidence of blood alcohol content (BAC) for prosecution of driving under the influence (DUI) cases by authorizing an officer to request a breath sample from drivers arrested for DUI. *See City of Seattle v. St. John*, 166 Wn.2d 941, 947, 215 P.3d 194 (2009). Under the statute, a driver is given the choice to refuse or consent to a breath test. RCW 46.20.308(2). If the driver refuses to provide a breath sample, the driver's refusal may be used as evidence of guilt at a subsequent criminal trial. *State v. Long*, 113 Wn.2d 266, 272-73, 778 P.2d 1027 (1989); RCW 46.20.308(2)(b). In the two cases here, an officer asked each defendant to submit to a breath test. Dominic Baird agreed to the test, and Collette Adams refused it. Baird's test results showed a BAC above the legal limit.

Pretrial, both defendants moved to suppress the evidence, arguing the breath test was a request to consent to a warrantless search and they had a constitutional right to refuse consent. Consequently, the State could not use their refusal as evidence of guilt. Baird further argued that because the officer told him that his refusal could be used as evidence, the officer coerced his consent through an unlawful threat, thereby invalidating his consent. The State took the position that the defendants had no constitutional right to

Laws of 2013, 2d Spec. Sess., ch. 35, § 36 version of the statute rather than the version in effect at the time of arrest, apparently because they conclude the amendments had no substantive effect on their arguments. We also discern no substantive difference. To avoid confusion and citing to multiple versions of the implied consent statute, our citations to RCW 46.20.308 refer to the version in effect from January 1, 2014 to September 25, 2015, Laws of 2013, 2d Spec. Sess., ch. 35, § 36.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90419-7

refuse because the exigent circumstances exception to the warrant requirement applies in all DUI cases. Due to the body's natural elimination of alcohol from the bloodstream as time passes, the delay necessary to obtain a warrant is impractical since the delay will cause the destruction of DUI evidence.

Relying on *McNeely* and *State v. Gauthier*, 174 Wn. App. 257, 298 P.3d 126 (2013), the trial court in each case held the defendants had a constitutional right to refuse consent to the warrantless breath test. In *McNeely*, the United States Supreme Court held that alcohol dissipation in routine DUI cases does not create per se exigent circumstances and that the State failed to prove that any warrant exception applied to justify a search of the defendant's blood for evidence of intoxication. In *Gauthier*, the Court of Appeals held that a defendant has a constitutional right to refuse consent to a warrantless search that did not fall under an exception to the warrant requirement and that refusal may not be admitted as evidence of guilt at a criminal trial. Reading these cases together, the *Baird* trial court reasoned that exigent circumstances did not justify a warrantless breath test and that Baird's consent was coerced, and it suppressed the test results. Similarly, the *Adams* trial court reasoned that evidence of Adams's refusal must be suppressed.

The State petitioned King County Superior Court for an interlocutory writ of review; review was granted and the cases consolidated. In the interests of justice, the superior court requested direct review from this court, finding that the district court rulings substantially altered the status quo regarding thousands of breath test and breath test refusal DUI cases.

3

No. 90419-7

We accepted review and now reverse. The district courts correctly rejected the State's argument that alcohol dissipation constitutes exigency per se—exigency must be determined under the totality of circumstances, case by case. We hold that the implied consent statute does not authorize a warrantless search, and a driver has no constitutional right to refuse a breath test because such a search falls under the search incident to arrest exception to the warrant requirement. Further, although the implied consent statute gives a driver a statutory right to refuse the test, by exercising the privilege to drive, a driver consents to admitting that refusal to take the breath test into evidence. Accordingly, we hold that a driver's refusal is admissible as evidence of guilt under Washington's implied consent law.

## FACTS

### State v. Baird

On November 12, 2012, around 9:40 p.m., Washington State Patrol (WSP) Trooper Phil Riney was on patrol on State Route 167 in south King County when he saw a vehicle driven by Baird weaving between lanes. He watched as Baird's vehicle drifted from one lane into another and then jerked back. Within one mile of travel, Baird repeated this behavior several times. He did, however, use his turn signal with each lane change. In addition to weaving, his speed fluctuated between 45 and 70 miles per hour on the roadway, which had a speed limit of 60 miles per hour. After observing Baird's behavior, Trooper Riney initiated a traffic stop.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90419-7

Baird rolled his window down, and Trooper Riney smelled "intoxicants" and green (unsmoked) marijuana. Clerk's Papers (CP) at 142. Baird had watery and bloodshot eyes and denied that he had marijuana in the car and that he had been drinking.

Trooper Riney asked him to step out of the vehicle, and Baird admitted that he had consumed a drink over an hour before. Baird performed voluntary field sobriety tests, including the walk and turn test and the horizontal gaze nystagmus test. The results suggested that Baird was impaired, so Trooper Riney arrested him.

WSP Trooper Christopher Poague came to the scene and transported Baird to the city of Kent Police Department for DUI processing. Trooper Poague read the statutory implied consent warnings (ICWs), RCW 46.20.308(2), and requested that Baird consent to a breath test for the purpose of determining his BAC. The ICWs include the warning that if the person refuses to consent to a breath test, that person's license will be revoked for at least one year and that the refusal may be used as evidence at a subsequent criminal trial. RCW 46.20.308(2)(a)-(b).

Baird agreed to take the breath test. He provided two breath samples, measuring 0.138 and 0.130, well above the legal breath alcohol concentration limit of 0.08. RCW 46.20.308(5).

The State charged Baird with one count of DUI in King County District Court. Baird moved to suppress the breath test results. He argued the breath test was a search, and under the Fourth Amendment to the United States Constitution and article I, section 7 of Washington's constitution, he had the right to refuse consent to the warrantless search

5

No. 90419-7

because no warrant exceptions applied. And if he had the constitutional right to refuse consent, the State could not use his refusal as evidence of guilt at a criminal trial under *Gauthier*. Although he consented to the test, the warning in RCW 46.20.308(2)(b)—stating refusal evidence may be used against the driver—coerced his consent because it stated a threat that the State had no authority to carry out.

The State argued that Baird had no constitutional right to refuse because when an officer requests a breath test under the implied consent statute, exigent circumstances always exist due to the natural dissipation of alcohol from the body as time passes. Any time delay would lead to the further destruction of DUI evidence, making the delay necessary to obtain a warrant impractical.

The trial court granted Baird's motion to suppress. Relying on *McNeely*, the court held that exigency is determined from the totality of circumstances. The court therefore rejected the State's per se argument and also concluded that no other warrant exceptions applied. Although the court recognized actual consent as another exception to the warrant requirement, it accepted a concession made by the State during oral argument that the ICWs coerced Baird's consent if Baird had a constitutional right to refuse the test.

*State v. Adams*

On April 6, 2013, around 2:00 a.m., WSP Trooper David Kiel was on patrol in downtown Bellevue. He saw Adams driving with her right headlight out and activated his emergency lights. Adams did not immediately pull over on the street, so Trooper Kiel

6

used his car's PA (public address) system and told Adams to stop, which she did about 75 feet into a parking garage.

Trooper Kiel noticed the smell of alcohol coming from Adams's car, and he asked her to exit the vehicle. As Adams closed the door, she almost lost her balance. Trooper Kiel asked Adams if she had anything to drink, and she said that she had consumed one drink about an hour earlier. He smelled alcohol on her breath and noted that she had slurred speech. He asked if she would perform some field sobriety tests. She declined and said that she would take a blood test. After Trooper Kiel said he would let her go if she passed the tests, she agreed to take a horizontal gaze nystagmus test and a walk and turn test. The results of the tests suggested Adams was intoxicated.

Trooper Kiel arrested Adams and transported her to the City of Clyde Hill Police Department. Without a warrant, he read her the statutory ICWs and requested that she consent to a breath test. Adams refused.

The State charged Adams with one count of DUI and the sentencing enhancement for refusing the breath test. Adams moved to suppress evidence of her refusal, arguing that she had a constitutional right to refuse and, consequently, her refusal could not be used as evidence at a criminal trial. The State argued that she had no constitutional right to refuse the test because the exigent circumstances exception always applies when an officer requests a breath test under the implied consent statute due to the natural dissipation of alcohol. The district court rejected the State's argument and granted the motion to suppress. The court concluded that no warrant exceptions applied; Adams had

7

No. 90419-7

a constitutional right to refuse consent; and, accordingly, the State could not use her refusal as substantive evidence of guilt under *Gauthier*.

Statutory Writ of Review

The State petitioned King County Superior Court for an interlocutory writ of review under RCW 7.16.040 and *City of Seattle v. Holifield*, 170 Wn.2d 230, 244-45, 240 P.3d 1162 (2010). The superior court consolidated *Baird* and *Adams* and granted the State's petition. The court noted that *McNeely*, the case relied on by the defendants, seemed to approve of implied consent breath testing and the penalties for refusing the test. It concluded that "McNeely arguably does not alter application of the exigent circumstances exception to a breath test administered pursuant to an implied consent law." CP at 82. Furthermore, it recognized that the district courts' holding that a person has a constitutional right to refuse consent to a breath test conflicted with numerous holdings by Washington appellate courts.

The superior court requested that we accept direct review, which we granted.

ANALYSIS

We review a trial court's legal conclusions on a motion to suppress de novo. *State v. Roden*, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014).

A breath test is a search under the Fourth Amendment and under article I, section 7. *State v. Garcia-Salgado*, 170 Wn.2d 176, 184, 240 P.3d 153 (2010). We presume that a warrantless search violates these constitutional provisions, and the State bears the burden to prove that one of the narrowly drawn exceptions to the warrant requirement

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90419-7

applies. *State v. Kirwin*, 165 Wn.2d 818, 824, 203 P.3d 1044 (2009). We have recognized that exigent circumstances may excuse the need for a warrant when the delay necessary to obtain a warrant is not practical because the delay would permit the destruction of evidence. *State v. Tibbles*, 169 Wn.2d 364, 370, 236 P.3d 885 (2010).

The State argues that when an officer requests a breath test under the implied consent statute, exigent circumstances exist per se because of the ongoing destruction of DUI evidence. After drinking stops, the body naturally metabolizes alcohol from the bloodstream, thereby making the delay necessary to obtain a warrant impracticable.

We recognize that our precedent supports the State's argument. For example, in *State v. Judge*, we interpreted a 1975 amendment to the implied consent statute to mean that suspects in alcohol related fatalities had no right to refuse either a breath test or a blood test. 100 Wn.2d 706, 710-11, 675 P.2d 219 (1984). Therefore, according to the statute, officers could obtain a blood alcohol test without the suspect's consent. *Id.* The defendant in that case challenged a blood draw—a search and seizure—taken without asking her consent as unreasonable under the Fourth Amendment and article I, section 7. *Id.* at 709. We held that the search was reasonable and that the taking of the blood sample did not require a warrant. *Id.* at 712. For support, we quoted the Supreme Court's decision in *Schmerber v. California*, 384 U.S. 757, 770-71, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), which held the emergency exception in a DUI case applied to a nonconsensual blood draw because the ongoing dissipation of alcohol—evidence of DUI—made the delay necessary to obtain a warrant impracticable under the

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90419-7

circumstances. *Judge*, 100 Wn.2d at 712; *see also Garcia-Salgado*, 170 Wn.2d at 185

(concluding warrant not required in DUI cases because exigency exists due to evidence

of alcohol constantly being eliminated from the body).

The State contends that *McNeely* does not control in implied consent statute cases

involving breath tests. In *McNeely*, the Supreme Court considered and rejected the

State's per se exigency argument as applied to nonconsensual blood draws. 133 S. Ct. at

1556.[2] The Court framed the question presented as "whether the natural metabolization

of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the

Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-

driving cases." *Id.* The Court made clear that under the Fourth Amendment, courts must

evaluate the totality of the circumstances "[t]o determine whether a law enforcement

officer faced an emergency that justified acting without a warrant." *Id.* at 1559.

The Court also reexamined *Schmerber*, which we relied on in *Judge*, and

concluded that *Schmerber* did not hold that alcohol dissipation alone presents an

exigency that excuses the warrant requirement. *Id.* Rather, it applied a totality of the

circumstances analysis. *Id.* In addition to the natural dissipation of alcohol, the Court in

*Schmerber* noted that time was lost taking the defendant to the hospital for treatment and

investigating the accident scene. 384 U.S. at 770-71. Evaluating all of these

circumstances together, the Court concluded the emergency exception applied in that

particular case. *McNeely*, 133 S. Ct. at 1560.

---

[2] The Supreme Court recently reaffirmed this holding in *Birchfield v. North Dakota*, __ U.S. __, 136 S. Ct 2160, 2174, 195 L. Ed. 2d 560 (2016).

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90419-7

While the natural dissipation of alcohol may support a finding of exigency in a given case, ultimately, courts must determine exigency under the totality of the circumstances, case by case. *Id.* at 1559. When officers can obtain a warrant in DUI investigations before taking a blood sample "without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561. We believe that this same logic applies to breath tests in regard to the exigency exception to the warrant requirement.

The State attempts to distinguish *McNeely*, arguing it requires a totality of the circumstances analysis to determine exigency only for highly invasive blood draws; because breath tests are minimally invasive, the State contends, the reasoning in *McNeely* does not apply here. Essentially, the State argues for an inverse rule where courts would conclude that the less invasive the search, the more exigent the circumstances for conducting the search. We decline to adopt this approach. Whether the emergency exception applies in a given case does not depend on the invasiveness of the search.[3] Rather, the exception requires a compelling need for officer action and circumstances that make the time necessary to secure a warrant impractical. *Id.* at 1559; *see also Birchfield*

---

[3] The State conflates two requirements for conducting a search that intrudes into the body. When a search intrudes into the body, the search must meet three showings, in addition to meeting the warrant requirement or meeting an exception. *Garcia-Salgado*, 170 Wn.2d at 185-86. First, there must be a "'clear indication'" that the evidence will be found; second, the search method must be reasonable; and third, the search must be performed in a reasonable manner. *Id.* at 185 (quoting *Schmerber*, 384 U.S. at 770). The State suggests that a warrantless breath test in a DUI case is constitutional if it meets these three showings. Br. of Pet'r at 15 (citing *State v. Curran*, 116 Wn.2d 174, 184-85, 804 P.2d 558 (1991)). We disagree. The State must make these showings *and* satisfy the warrant requirement or establish that an exception applied. *Garcia-Salgado*, 170 Wn.2d at 185-86.

11

*v. North Dakota,* ___ U.S. ___, 136 S. Ct. 2160, 2174, 195 L. Ed. 2d 560 (2016). Here, the State argues the same compelling need as was presented in *McNeely*: dissipation of alcohol in the blood makes the delay in obtaining a warrant per se impractical in DUI cases. The Supreme Court rejected this argument. Consequently, we also reject it. Exigency is determined under the totality of the circumstances, case by case. In the cases before us, the State did not present evidence of exigency to justify a warrantless search. Therefore, we agree with the district courts that the State did not establish this exception applied in either case.

Our conclusion that exigent circumstances did not justify the searches here does not, however, resolve whether the test result was admissible in *Baird* or whether evidence of refusal was admissible in *Adams*. The defendants argue that if the State cannot establish a valid warrant exception for the warrantless breath test, then they had a constitutional right to refuse consent and that under the Fourth Amendment and article I, section 7, the State cannot use their refusal as evidence of guilt at a criminal trial. Similarly, they recognize that if the State *can* establish a valid exception to the warrant requirement, they have no constitutional right to refuse the test. Br. of Resp't Adams at 24. The Supreme Court of the United States has recently decided this question for us: breath tests conducted subsequent to an arrest for DUI fall under the search incident to arrest exception to the warrant requirement. *Birchfield*, 136 S. Ct. at 2185. Because the search falls under an exception, as the defendants themselves acknowledge, there is no constitutional right to refuse the breath test.

12

In *Birchfield*, the Supreme Court considered whether criminal penalties for refusing to take a breath test under Minnesota's and North Dakota's implied consent laws were constitutional. The Court held that because the "impact of breath tests on privacy is slight, and the need for BAC testing is great," the Fourth Amendment permits breath tests as a search incident to arrest for drunk driving. *Id.* at 2184. Because a breath test is a permissible search incident to arrest, "the Fourth Amendment did not require officers to obtain a warrant prior to demanding the test, and [petitioner] had no right to refuse it." *Id.* at 2186. A driver thus has no *constitutional* right to refuse a breath test because the breath tests fall under the search incident to arrest exception to the warrant requirement. If the driver has no constitutional right to refuse, admitting evidence of that refusal is not a comment on the driver's exercise of a constitutional right because no constitutional right exists. As discussed below, the right to refuse exists solely as a matter of legislative grace from the implied consent statute.

That breath tests fall under the search incident to arrest exception to the warrant requirement is what makes this case distinct from *Gauthier*, the primary case relied on by the defendants. 174 Wn. App. at 261-62, 264-65 (holding prosecutor violated defendant's constitutional right to refuse by arguing at trial that defendant's refusal to submit to a warrantless DNA (deoxyribonucleic acid) swab showed his guilt regarding the charged rape). In that case, the court analyzed the refusal to submit to a warrantless search that did not fall under an exception to the warrant requirement. Here, the search

13

No. 90419-7

falls under such an exception; therefore, the principle from *Gauthier*, while still generally meritorious, does not apply to this case.

As this court has recognized before, and as the *Birchfield* decision further supports, we do not address the warning requirement on a constitutional basis, but as a right granted through the statutory process. Thus, while an arrestee has no constitutional right to refuse the breath test, he or she does have a statutory right under the implied consent law to refuse the test. As we observed in *State v. Whitman County District Court*, "The courts of this state have not addressed the warning requirements of the implied consent law on a constitutional basis, but rather as rights granted through the statutory process." 105 Wn.2d 278, 281, 714 P.2d 1183 (1986); *see also State v. Morales*, 173 Wn.2d 560, 567, 269 P.3d 263 (2012); *Gonzales v. Dep't of Licensing*, 112 Wn.2d 890, 896, 774 P.2d 1187 (1989). As this court has stated,

> "It is not our purpose to declare these statutory provisions unconstitutional. But in order for us to avoid holding them invalid, it is necessary to reconcile them with each other and to give effect to all. If the person under arrest is to be held to have refused to submit to [a breath test], he must have refused knowingly and intelligently, after being advised of his right to have a physician, etc., of his own choosing administer an additional test or tests."

*Connolly v. Dep't of Motor Vehicles*, 79 Wn.2d 500, 504, 487 P.2d 1050 (1971) (quoting *Couch v. Rice*, 23 Ohio App. 2d 160, 161, 261 N.E.2d 187 (1970)). This court has further held that the warning that "'refusal to take the test may be used in a criminal trial'" did not deprive drivers who refused the test of the opportunity to make a knowing and intelligent decision whether to take the test, since the warning was sufficient to alert

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

drivers that their refusal could be used at any phase of a criminal trial. *State v. Bostrom*, 127 Wn.2d 580, 586, 902 P.2d 157 (1995) (quoting former RCW 46.20.308(2) (1995)).

We review the implied consent warning not on a constitutional basis, but rather as a right granted as a matter of grace through the statutory process. *Morales*, 173 Wn.2d at 567 (citing *Gonzales*, 112 Wn.2d at 896; *Whitman County*, 105 Wn.2d at 281). We have never held that refusal to consent to a BAC test cannot be introduced as evidence of guilt, especially when the defendant agreed to this result in exchange for the privilege to drive. *See, e.g., Long*, 113 Wn.2d at 272 ("Since the right to refuse to submit to a breath test is a matter of legislative grace, the Legislature may condition that right by providing that a refusal may be used as evidence in a criminal proceeding."); *see also State v. Zwicker*, 105 Wn.2d 228, 242, 713 P.2d 1101 (1986) ("Attaching penalties to the exercise of the statutory right of refusal is not inherently coercive where the Legislature could withdraw this privilege altogether.").

Washington's implied consent statute does not authorize a search; instead, it authorizes a choice between two options, to consent or refuse, with penalties attached for refusal. *See Long*, 113 Wn.2d at 272; *Zwicker*, 105 Wn.2d at 242; *accord State v. Padley*, 2014 WI App 65, 354 Wis. 2d 545, 564-76, 849 N.W.2d 867; *see also McNeely*, 133 S. Ct. at 1566 (plurality opinion) (noting that "all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested" or incur penalties for refusal); *Birchfield*, 136 S. Ct. at 2185 ("Our prior opinions have referred approvingly to the

15

No. 90419-7

general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply."). "The choice to submit to or refuse the test is not a constitutional right, but rather a matter of legislative grace." *Bostrom*, 127 Wn.2d at 590) (citing *Zwicker*, 105 Wn.2d at 242).

Washington's implied consent statute, RCW 46.20.308, says that drivers consent to a breath test by driving in Washington State:

> (1) *Any person who operates a motor vehicle within this state is deemed to have given consent . . . to a test or tests of his or her breath* for the purpose of determining the alcohol concentration . . . if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug or was in violation of RCW 46.61.503.

(Emphasis added.) But the statute does not allow an officer to conduct a breath test unless the driver is arrested and actually consents to the test after being read statutory warnings.

> (4) If, following his or her arrest and receipt of warnings under subsection (2) of this section, the person arrested refuses upon the request of a law enforcement officer to submit to a test or tests of his or her breath, *no test shall be given* except as authorized by a search warrant.

RCW 46.20.308 (emphasis added).

Functionally, the "implied consent" in the statute does not mean that police may require drivers to consent to the breath test simply because they drove. Rather, it means that in situations that the legislature has specified,[4] if a driver chooses not to consent, the driver agrees that he or she will incur the consequences of that decision:

---

[4] The provisions of the implied consent statute apply when a driver is

16

> (2) . . . The officer shall warn the driver, in substantially the following language, that:
>
> (a) If the driver refuses to take the test, the driver's license, permit, or privilege to drive will be revoked or denied for at least one year; and
>
> (b) If the driver refuses to take the test, the driver's refusal to take the test may be used in a criminal trial.

*Id.*

While the defendants have a statutory right to refuse consent, permitting the State to use their refusal as evidence of guilt, under the implied consent statute, does not violate that right. Indeed, the Court of Appeals in *Gauthier* noted that courts exclude refusal evidence, in part, because its use would be unfair to suggest that refusal is an indication of guilt. 174 Wn. App. at 263-66. The court observed that although a person may refuse a warrantless search because he or she has incriminating evidence to hide, a person may also refuse because of distrust of law enforcement or for many other reasons. *Id.* at 265. Because refusal is ambiguous, courts have found it unfair to allow a jury to infer guilt from refusal, particularly when such refusal involves the exercise of a constitutional right. *See id.* at 264-65.

In other words, courts have created a prophylactic rule, shielding defendants from the adverse use of refusal evidence, grounded in considerations of fairness. *See id.; see also Long*, 113 Wn.2d at 272-73; ER 403. But for a breath test to determine alcohol consumption under Washington's implied consent statute, for which a defendant has no

---

arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug or was in violation of RCW 46.61.503.

RCW 46.20.308(1).

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

constitutional right to refuse like in *Gauthier*, we do not have the same concerns regarding fairness.

In exchange for the privilege of driving on Washington's roadways, drivers agree and have notice that their refusal to consent to a statutorily requested breath test may be used as evidence of guilt at a criminal trial. *See Long*, 113 Wn.2d at 272-73; RCW 46.20.308. They impliedly consent to this result by driving on the roadway and by driving under circumstances that amount to probable cause to believe they are intoxicated, and ultimately, they actually agree to this result when they refuse the breath test. *See* RCW 46.20.308(1)-(2)(b). Under our Rules of Evidence, parties may waive the opportunity to object to the admissibility of evidence. *See* ER 103. In essence, drivers waive the right to shield their refusal from use as evidence when they take advantage of the privilege to drive in exchange for their waiver.[5] More importantly, the statute exists to protect the public from drunk drivers and reasonably relates to the public safety of the very roadways that the defendant was privileged to use. *See State v. Moore*, 79 Wn.2d 51, 57-58, 483 P.2d 630 (1971) (upholding implied consent statute as a reasonable exercise of the State's police power, "having as its purpose the reduction of traffic carnage occasioned by the inebriated driver"). Obtaining a breath test—to verify intoxication and thereby help ensure that an intoxicated driver does not remain on the roadway—relates to the safety of all motorists. *See id.* In this context, allowing a

---

[5] The Ninth Circuit has held that the Fourth Amendment gives a suspect the right to refuse consent to a warrantless search and that, generally, a person's refusal cannot be used as evidence of guilt. *United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978). However, the Ninth Circuit also recognized that a defendant can waive his or her objection to the use of refusal evidence. *Id.* at 1352.

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90419-7

defendant's refusal to be admissible as evidence of guilt furthers the government's legitimate public safety goals. *See id.*

The United States Supreme Court also implicitly approved of this result under the Fourth Amendment, suggesting that implied consent statutes, with their attendant penalties for refusal, remain viable.[6] *McNeely*, 133 S. Ct. at 1566 (plurality opinion).

> [A]ll 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested .... Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution.

*Id.*[7] A majority of the Court recently reiterated this approval of implied consent statutes in *Birchfield*, 136 S. Ct. at 2185. The *Birchfield* Court further stated, "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt upon them." *Id.* (citations omitted).

---

[6] Justice Kennedy did not join Part III, where the lead opinion approved of implied consent statutes. *McNeely*, 133 S. Ct. at 1568 (Kennedy, J., concurring in part). He did, however, explain his criticism of this section. *Id.* at 1568-69. In that criticism, he did not comment on the lead opinion's discussion of implied consent statutes. *See id.*

[7] "We recognize, of course, that the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make. But the criminal process often requires suspects and defendants to make difficult choices." *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983).

19

Because we determine that, even after *McNeely* and particularly after *Birchfield*, a driver's refusal is admissible as evidence of guilt under the implied consent statute, we reverse the district courts' suppression of the evidence in both cases.

On remand in *Adams*, Adams's refusal is admissible in her criminal trial.

In Baird's case, he argues that his consent was coerced and therefore invalid because the statutory warning stating his refusal could be used against him was a threat the State had no authority to carry out.[8] Because we conclude the State can use a driver's refusal in a criminal trial, we reject this argument. On remand, Baird's breath test results are admissible.

## CONCLUSION

We reverse the district courts' suppression rulings in both cases. Under the implied consent statute, a driver's refusal to consent to a breath test is admissible as evidence of guilt in a criminal trial. Such refusal is not a comment on the exercise of a person's constitutional rights because once an exception to the warrant requirement is found to apply, no constitutional right to refuse exists. Any right to refuse exists only as

---

[8] Baird also argues that the implied consent statute violates the doctrine of unconstitutional conditions, *see, e.g., United States v. Scott*, 450 F.3d 863 (9th Cir. 2006), premised on the assumption that the statute acts as valid consent for a search because it requires a broad waiver of Fourth Amendment protection in exchange for the "'privilege'" to drive. Br. of Resp't Baird at 27-28. We reject this argument because we have already rejected its premise: the "implied consent" in the statute does not act as valid consent for a search. *See* RCW 46.20.308(4). Rather, absent a warrant or an exception, an officer must obtain actual consent for a breath test. Further, because such an exception to the warrant requirement exists in this case, the breath test falls outside of Fourth Amendment protection. Thus the implied consent statute cannot be a waiver of that nonexistent Fourth Amendment protection.

20

No. 90419-7

a statutory right by virtue of the implied consent statute. We remand for further

proceedings consistent with this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90419-7

_Madsen, C.J._

WE CONCUR:

*State v. Baird/State v. Adams*, No. 90419-7 (González, J., concurring)

GONZÁLEZ, J. (concurring)—I concur with the lead opinion that a driver's refusal to take a breath test is admissible under Washington's implied consent law as evidence of guilt, but I write separately to emphasize that a breath test, after reasonable suspicion of driving under the influence (DUI) has been established, is a limited and reasonable search; therefore, admitting evidence of a person's refusal has no constitutional implications. WASH. CONST. art. I, sec. 7; U.S. CONST. amend. IV. As the United States Supreme Court recently reaffirmed, "A breath test does not 'implicat[e] significant privacy concerns.'" *Birchfield v. North Dakota*, __ U.S. __, 136 S. Ct. 2160, 2178, 195 L. Ed. 2d 560 (2016) (alteration in original) (quoting *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 626, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989)).

A Fourth Amendment search does not occur unless "the individual manifested a subjective expectation of privacy in the object of the challenged search" and "society [is] willing to recognize that expectation as reasonable." *California v. Ciraolo*, 476 U.S. 207, 211, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986) (citing *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *Smith v. Maryland*, 442 U.S. 735, 740, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979)).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Baird/State v. Adams*, No. 90419-7 (González, J., concurring)

A breath test is much less intrusive than other blood alcohol tests and produces only a limited amount of information. *Cf. Maryland v. King*, __ U.S. __, 133 S. Ct. 1958, 1969, 186 L. Ed. 2d 1 (2013). A blood draw, for instance, entails a "physical intrusion beneath [the] skin and into [the] veins to obtain a sample of ... blood." *Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1558, 185 L. Ed. 2d 696 (2013). Beyond this puncturing of the skin, a blood test can produce a much wider array of information than a breath test, such as a person's DNA (deoxyribonucleic acid) or the presence of certain diseases. In contrast, a breath test simply captures one's breath and produces a scope of information that is limited solely to a calculation of the alcohol content of the breather's blood.

The Fourth Amendment and article I, section 7 share a reasonableness requirement, but article I, section 7 has additional protections for private affairs.[1] *See State v. Valdez*, 167 Wn.2d 761, 771-72, 224 P.3d 751 (2009). Warrantless searches are unreasonable per se without a valid exception. *State v. White*, 135 Wn.2d 761, 769 & n.8, 958 P.2d 982 (1998) (citing *State v. Hendrickson*, 129 Wn.2d 61, 71, 917 P.2d 563 (1996)). A search incident to arrest is a valid

---

[1] Notably, random sobriety checkpoints, while constitutional under the Fourth Amendment, are impermissible under the Washington Constitution because they lack individualized suspicion. *Compare City of Seattle v. Mesiani*, 110 Wn.2d 454, 755 P.2d 775 (1988), *with Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990). In this case, however, reasonable suspicion of DUI requires an individualized determination.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

exception to the warrant requirement.[2]  Unlike the case-by-case approach

necessary to satisfy the exigent circumstances exception, the search incident to

arrest exception is categorical.  *Birchfield*, 136 S. Ct. at 2179; *see also State v.*

*Byrd*, 178 Wn.2d 611, 623, 310 P.3d 793 (2013) ("Searches of the arrestee's

person incident to arrest extend only to articles 'in such immediate physical

relation to the one arrested as to be in a fair sense a projection of his person.'"

(quoting *United States v. Rabinowitz*, 339 U.S. 56, 78, 70 S. Ct. 430, 94 L. Ed. 653

(1950) (Frankfurter, J., dissenting))).  Despite a driver's subjective expectation of

privacy in his or her breath, it cannot be said that society is willing to recognize the

reasonableness of that expectation incident to arrest for DUI.  *Cf. State v. Athan*,

160 Wn.2d 354, 372, 158 P.3d 27 (2007) (no privacy interest in saliva used to seal

an envelope for mailing).

Nonetheless "article I, section 7 prohibits any disturbance of an individual's

private affairs 'without authority of law.'"  *Valdez*, 167 Wn.2d at 772 (citing *York*

*v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 305-06, 178 P.3d 995 (2008)).

"Part of this inquiry focuses on what kind of protection has been historically

---

[2] This exception applies here since Dominic Baird and Collette Adams both refused a breath test after an arrest.  Surmounting the privacy bar would prove more difficult if the only evidence of refusal came before arrest, even with reasonable suspicion of DUI. *See State v. Mecham*, 186 Wn.2d 128, 154, 380 P.3d 414 (2016) (Fairhurst, J., concurring/dissenting) (when "a suspect is not yet under arrest" a field sobriety test can exceed the "constraints imposed by *Terry*" without a "warrant or warrant exception" (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968))).

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

afforded to the interest asserted, and part of it focuses on the nature and extent of the information that may be obtained as a result of government conduct." *State v. Reeder*, 184 Wn.2d 805, 814, 365 P.3d 1243 (2015). Between the long-standing application of the implied consent statute, used to keep streets safe, and the limited information obtained, it cannot be said that an individual's private affairs are disturbed in this case.[3] This conclusion is supported by the Court's *Birchfield* decision, which compared a breath test to "[t]he use of a straw to drink beverages" and recognized that "[n]o sample of anything is left in the possession of the police." 136 S. Ct. at 2177.

The search is reasonable under the Fourth Amendment because (1) society is not willing to recognize an expectation of privacy in a reasonably suspicious driver's breath and (2) a breath test is a minor imposition that is limited solely to collecting information to calculate the alcohol content of the breather's blood. The limited use of a breath test after arrest does not contravene the safeguards that protect the privacy rights of drivers under the Washington Constitution. With this understanding, I join the lead opinion in saying that a driver's refusal to take a breath test is admissible as evidence of guilt.

---

[3] One has the right to refuse a breath test and to be made aware of the consequences for refusing. RCW 46.20.308. *See generally In re Welfare of Colyer*, 99 Wn.2d 114, 121, 660 P.2d 738 (1983) (noting that the "right to be free from nonconsensual invasions of one's bodily integrity is the basis for the doctrine of informed consent").

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Baird/State v. Adams*, No. 90419-7 (González, J. concurring)

González, J.

5

*State v. Baird (Dominic)/State v. Adams (Collette)*, No. 90419-7
(Gordon McCloud, J., dissenting)

No. 90419-7

GORDON McCLOUD, J. (dissenting)—I agree with the lead opinion that a law enforcement breath test constitutes a search. Lead opinion at 8. Both our court and the United States Supreme Court have clearly held that obtaining such biological samples for testing constitutes a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 618, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989) (holding urine test constitutes a search); *id.* at 616-17 (stating that breath test "generally requires the production of alveolar or 'deep lung' breath," "implicates similar concerns about bodily integrity," and "should also be deemed a search"); *see also State v. Garcia-Salgado*, 170 Wn.2d 176, 184, 240 P.3d 153 (2010). The Supreme Court has even held that moving inanimate stereo equipment (a Bang & Olufsen turntable) "'a few inches'" to locate a serial number constitutes a "search," despite the fact that the officer was lawfully present in the apartment in which the stereo was located. *Arizona v. Hicks*, 480 U.S. 321, 324-35, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987); *see also Grady v. North Carolina*, __ U.S. __, 135 S. Ct. 1368, 1370-71, 191 L. Ed.

1

2d 459 (2015) (per curiam) (when a State attaches a satellite-based monitoring device to a person's body without consent to track his or her movements, the State is conducting a "search" within the meaning of the Fourth Amendment to the federal constitution). It necessarily follows that forcing a person to move his or her lungs to obtain and capture alveolar, or "deep lung," breath constitutes a search, also.[1]

I also agree with the lead opinion and the concurrence that such a search must be authorized by a warrant, unless a specific exception to the warrant requirement applies. Lead opinion at 8-9; concurrence at 3-4; *see Missouri v. McNeely*, __ U.S. __, 133 S. Ct. 1552, 1558, 185 L. Ed. 2d 696 (2013); *Schmerber v. California*, 384 U.S. 757, 770, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966).

Further, I agree with the lead opinion that following the Supreme Court's decision in *McNeely*, there is no per se exigency exception to the warrant requirement due to dissipation of alcohol in the body, regardless of whether the warrant requirement is triggered by a blood test search or a breath test search. Lead opinion at 11-12; *see McNeely*, 133 S. Ct. at 1559, 1568 (metabolization of alcohol

---

[1] In the trial court, the State agreed. *Adams* Verbatim Report of Proceedings (VRP) (Mar. 27, 2014) at 158 ("[t]he State concedes of course that the breath test is a search"); *Baird* VRP (Apr. 10, 2014) at 60, 63-64 (same concession several times).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(in that case, in the blood) "does not constitute an exigency in every case" sufficient to excuse warrant requirement).

The lead opinion, however, concludes that there is another, separate exception to the warrant requirement that applies here. Citing to the United States Supreme Court's recent decision in *Birchfield v. North Dakota*, __ U.S. __, 136 S. Ct. 2160, 2186, 195 L. Ed. 2d 560 (2016), the lead opinion holds that the search incident to arrest exception to the warrant requirement allows police to conduct warrantless breath tests incident to all arrests for driving under the influence (DUI), regardless of the need for such a warrantless test in the particular case. Lead opinion at 12. And the lead opinion implies that *Birchfield*'s holding on this point is binding on our court: "[t]he Supreme Court of the United States has recently decided this question for us." *Id.*

The lead opinion is certainly correct that the Supreme Court is the final arbiter of whether a breath test fits within the search incident to arrest exception to the Fourth Amendment's warrant clause. But this court, and this court alone, is the final arbiter of whether a breath test fits within the search incident to arrest exception to article I, section 7 of the Washington Constitution. And there can be no dispute that article I, section 7 of the Washington Constitution provides greater protection of individual rights—including article I, section 7's right to privacy—than does the

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Fourth Amendment. Hence, we need not adopt *Birchfield*'s newly discovered categorical exception to the Fourth Amendment's warrant requirement for all breath tests here in Washington.

That leaves our court with the remaining question of whether the breath test and the refusal to perform such a test (in the two consolidated cases before us today) are admissible in evidence at a criminal trial in our state.

It is surprising that the lead opinion begins and ends its answer to this question with the Fourth Amendment. Our court has consistently recognized that "[a]rticle I, section 7 is more protective of individual privacy than the Fourth Amendment, and we turn to it first when both provisions are at issue." *State v. Byrd*, 178 Wn.2d 611, 616, 310 P.3d 793 (2013) (citing *State v. Bravo Ortega*, 177 Wn.2d 116, 122, 297 P.3d 57 (2013); *State v. Walker*, 157 Wn.2d 307, 313, 138 P.3d 113 (2006); *State v. Afana*, 169 Wn.2d 169, 176, 233 P.3d 879 (2010)); *see also City of Seattle v. Mesiani*, 110 Wn.2d 454, 456, 755 P.2d 775 (1988) (analyzing article I, section 7 issues first, before Fourth Amendment issues)). The lead opinion doesn't even turn to article I, section 7 second.

I disagree. I think we should turn to article I, section 7 first. Under article I, section 7, "a warrantless search is per se unreasonable unless the State proves that one of the few 'carefully drawn and jealously guarded exceptions' [to the warrant

*State v. Baird (Dominic)/State v. Adams (Collette)*, No. 90419-7
(Gordon McCloud, J., dissenting)

requirement] applies." *Byrd*, 178 Wn.2d at 616 (quoting *Bravo Ortega*, 177 Wn.2d at 122 (citing *Afana*, 169 Wn.2d at 176-77; *State v. Patton*, 167 Wn.2d 379, 386, 219 P.3d 651 (2009))). A search incident to arrest is one of those "'carefully drawn and jealously guarded exceptions.'" *Id.* (quoting *Bravo Ortega*, 177 Wn.2d at 122). It certainly extends to a person and his or effects. *Id.*

But we have never applied it to bodily contents, that is, to something inside the person, like breath or blood. Instead, we have applied this exception to things— like a purse (*Byrd*), a jacket (*State v. Parker*, 139 Wn.2d 486, 987 P.2d 73 (1999)), or a car (*State v. Ringer*, 100 Wn.2d 686, 697, 674 P.2d 1240 (1983), *overruled by State v. Stroud*, 106 Wn.2d 144, 151-52, 720 P.2d 436 (1986)).

Bodily constituents like the breath at issue in these cases are different. They are certainly shielded by the state constitutional right to privacy. In *Garcia-Salgado*, for example, we held that taking a cheek swab from an arrestee constitutes a search and that it cannot be accomplished without appropriate authority of law. 170 Wn.2d at 184. To be sure, we did not address the search incident to arrest exception there. But we made clear that we accord great respect to one's bodily integrity. *Id.* at 186-88. In fact, we held that where law enforcement intrusion into "'bodily integrity'" (as opposed to inanimate things) was concerned, we required a higher showing to justify the intrusion than is ordinarily required. *Id.* at 184 (quoting

5

*Schmerber*, 384 U.S. at 617). We held that the State must also show three things: "First, there must be a 'clear indication' that the desired evidence will be found if the search is performed. [*Schmerber*, 384 U.S.] at 770. Second, the method of searching must be reasonable. *Id.* at 771. Third, the search must be performed in a reasonable manner. *Id.* at 772." *Id.* at 185.

For that reason, I do not think that the Washington Constitution allows us to apply the same analysis to the issue before our court that the *Birchfield* majority used when it applied the Fourth Amendment to the breath tests reviewed in that court. Instead, the Washington Constitution requires us to begin this analysis by weighing the importance of the privacy value at stake, against the likelihood that the test will yield useful results and the reasonableness of the warrantless means. Here, our case law holds that the right to privacy in one's biological samples and bodily integrity is an important value. But the State has not shown the reasonableness of adopting a categorical, blanket, exception to the warrant requirement, as opposed to a case-by-case inquiry, is reasonable given that privacy interest. To be sure, the asserted justifications for intruding on the privacy right—here, safety and evidence preservation—are important. But the question for us is whether the State has shown that article I, section 7 permits us to allow those justifications to trump the privacy right on a categorical basis rather than with a case-by-case analysis (as would occur

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

under the exigent circumstances exception, which might well apply in many DUI cases).

On this point, I find the *Birchfield* partial dissent—which is the only *Birchfield* opinion that really takes a close look at factual data concerning the time it generally takes to obtain a breath sample, the time it generally takes to obtain a warrant, and the minimal additional costs and inefficiencies implicated by procuring a warrant— more persuasive. It is also more in line with the analysis we adopted in *Garcia- Salgado*. That partial dissent appropriately recognizes the need to address each proffered justification for the warrantless search to see if it is really supported by the facts, before deciding that there is a need to extend a categorical rule allowing breath searches incident to arrest for every suspected DUI driver—rather than sticking with the case-by-case exigent circumstances rule, which allows breath searches only when necessary. It does so, and finds the proffered justifications wanting. *Birchfield*, 136 S. Ct. at 2195 (Sotomayor, J., concurring in part/dissenting in part).

The Washington Constitution demands just such a factual analysis. The *Birchfield* partial dissent, which is the only *Birchfield* opinion to conduct the sort of analysis that our state constitution requires, is thus the far more persuasive opinion on this point. I would therefore conclude that a breath test taken without a warrant or such a case-by-case exigency analysis is impermissible under article I, section 7.

7

*State v. Baird (Dominic)/State v. Adams (Collette)*, No. 90419-7
(Gordon McCloud, J., dissenting)

Based on that conclusion, I would hold that the compelled breath test here was an unconstitutional warrantless search and admission of either the compelled breath test result or the breath test refusal is impermissible. The reason is that the United States Supreme Court has consistently held that people have a *constitutional* right to refuse to consent to such an unconstitutional warrantless search. *Camara v. Mun. Court*, 387 U.S. 523, 540, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). Our court has said the same thing. *State v. Jones*, 168 Wn.2d 713, 725, 230 P.3d 576 (2010).

The lead opinion therefore also errs in claiming that even if a warrantless breath test were unconstitutional, our implied consent law would still function as a waiver of any challenge to admissibility. Lead opinion at 18.

I disagree. In fact, the logic of *Birchfield* itself bars such a "waiver" claim analysis. In *Birchfield*, the Court explained the federal constitutional limit on the reach of implied consent laws: the Fourth Amendment permits laws that imply consent to warrantless breath tests and that render breath test results admissible because the Fourth Amendment makes such warrantless breath tests constitutional under the search incident to arrest exception, but the Fourth Amendment bars laws that imply consent to warrantless blood draws and that render blood test results admissible because the Fourth Amendment makes such warrantless blood draws unconstitutional and exempt from the search incident to arrest exception. 136 S. Ct.

8

*State v. Baird (Dominic)/State v. Adams (Collette)*, No. 90419-7
(Gordon McCloud, J., dissenting)

at 2184. In other words, if the search is constitutional, there is no right to refuse. But if the search is unconstitutional there is definitely a right to refuse—and neither the refusal nor the test can be admitted into evidence. The Supreme Court's holding on this constitutional matter means that there can be no plausible implied consent waiver theory allowing admission of the fruits of an unconstitutional search or a constitutional refusal.

In fact, I have never before seen a court equate a criminal defendant's relinquishment of a constitutional protection during the course of an investigation or arrest with a party's decision to waive objection to admission of certain evidence during the course of an adversary judicial proceeding. The analogy is inapt. The lead opinion's waiver analysis with its citation to "waiv[ing] the opportunity to object to the admissibility of evidence" under "ER 103," lead opinion at 18, is what we use to review a transcript to determine if a defendant's failure to object to a discretionary evidentiary ruling precludes appellate review. We use a very different analysis to determine the legal effect of a criminal defendant's relinquishment of a constitutional right to privacy when confronted by law enforcement before trial, before adversary proceedings, and before judicial supervision. In that latter situation, we ask, instead, whether that defendant voluntarily gave up the constitutional right under a totality of the circumstances test. *Schneckloth v.*

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *see also*

*State v. O'Neill*, 148 Wn.2d 564, 588, 62 P.3d 489 (2003) ("To show that valid

consent to a search has been given, the prosecution must prove that the consent was

freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.

Ct. 1788, 20 L. Ed. 2d 797 (1968); *State v. Walker*, 136 Wn.2d 678, 682, 965 P.2d

1079 (1998). Whether consent was voluntary or instead the product of duress or

coercion, express or implied, is a question of fact to be determined from the totality

of the circumstances. *State v. Bustamante-Davila*, 138 Wn.2d 964, 981, 983 P.2d

590 (1999); *State v. Jensen*, 44 Wn. App. 485, 488, 723 P.2d 443 (1986).").

I therefore respectfully dissent from not just the lead opinion's conclusion that

breath tests of all suspected DUI drivers fall within the categorical search incident

to arrest exception to article I, section 7's privacy protection. I also dissent from its

decision to swap implied consent rule waiver analysis for constitutional

voluntariness analysis. In this case, Collette Adams did not relinquish her rights

under the constitutional voluntariness standard or any standard, she asserted them;

Dominic Baird did relinquish his rights, but it was in response to a law enforcement

threat. Hence, our precedent dictates that the next question should be whether that

relinquishment met the constitutional voluntariness standard.

*State v. Baird (Dominic)/State v. Adams (Collette)*, No. 90419-7
(Gordon McCloud, J., dissenting)

In this case, however, the State *conceded* that Baird did not relinquish this right voluntarily. As the State candidly acknowledged in its brief in our court, "If the district court is correct that the effect of <u>McNeely</u> is to effectively eliminate implied consent breath testing, admitting refusal evidence or imposing refusal penalties *does* violate the Fourth Amendment and article 1, section 7." Br. of Pet'r at 37 (citing *State v. Gauthier*, 174 Wn. App. 257, 261, 267, 298 P.3d 126 (2013); *Jones*, 168 Wn.2d at 725; *United States v. Prescott*, 581 F.2d 1343, 1353 (9th Cir. 1978). We are certainly not bound by this concession. But we are bound by the record. And in these cases, the State presented no *facts* at the evidentiary hearings in the district court on the voluntariness of the waiver. The trial court therefore ruled that there was no voluntary waiver.

In a different case, if there were a real factual question about the voluntariness of consent to a breath test, the State could offer facts at a fact-finding hearing on the exception to the warrant requirement. And in a different case, if there were a factual question about whether any other exception to the warrant requirement applied, the State could offer facts relevant to those case-by-case determinations. But on this record, the trial court correctly ruled that the State did not present any evidence at the hearings on the existence of voluntary consent, or exigent circumstances or any other exception to the warrant requirement, based on the facts in these cases.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Baird (Dominic)/State v. Adams (Collette)*, No. 90419-7
(Gordon McCloud, J., dissenting)

I would therefore affirm both suppression orders.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Baird (Dominic)/State v. Adams (Collette)*, No. 90419-7
(Gordon McCloud, J., dissenting)

Gordon McCloud, J.

Stephens, J.

Fairhurst, J.