**FILED**
**MARCH 16, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33859-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| JOSE LUIS SOSA, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — A judicially authorized blood draw revealed Jose Luis Sosa had a

blood alcohol concentration (BAC) of 0.12 several hours after he caused a two-car

collision. Mr. Sosa was subsequently charged and convicted of vehicular assault. On

appeal, Mr. Sosa argues evidence of his blood test results should have been suppressed

because he was not advised, at the time of the blood draw, of the right to independent

testing.

The cases relied on by Mr. Sosa in support of his right-to-advice argument

interpret prior versions of the Revised Code of Washington. The statutes in effect at the

time of Mr. Sosa's offense no longer required advice about independent testing in the

context of a blood draw. Nor is there any independent constitutional right to such advice. Accordingly, any failure of law enforcement to advise Mr. Sosa about the right to an independent test had no bearing on the State's evidence or Mr. Sosa's conviction.

We reject Mr. Sosa's challenge to his conviction based on the blood test results, along with his other claims of error. However, we reverse Mr. Sosa's sentence in part because the trial court erroneously imposed a driving under the influence (DUI) fine.

## FACTS

In the early hours of a March 2014 morning, Jose Sosa's vehicle crossed the center line of U.S. Route 12, causing a two-car collision. Mr. Sosa called 911 and law enforcement responded to the scene. On contact, the responding officer noticed Mr. Sosa smelled of alcohol and showed signs of impairment. In response to questioning, Mr. Sosa disclosed that he had some beer earlier but did not provide any specifics. An ambulance transported Mr. Sosa to the hospital.

At the emergency room, a state trooper contacted Mr. Sosa. Again, Mr. Sosa was noted to smell of alcohol and display signs of impairment. The trooper asked Mr. Sosa if he would be willing to do a voluntary field sobriety test. Mr. Sosa did not respond. The trooper then offered to administer a portable breath test (PBT), which would have provided a preliminary indication of Mr. Sosa's BAC. Again, Mr. Sosa did not respond.

2

Based on the trooper's observations, a warrant was obtained to procure a sample of Mr. Sosa's blood. Three and a half hours after the accident, Mr. Sosa's BAC was 0.12. Mr. Sosa was arrested and charged with vehicular assault.

Several days after the accident, the driver of the vehicle hit by Mr. Sosa returned to the hospital because of abdominal pain. Doctors performed a lifesaving partial splenectomy.

Mr. Sosa's case proceeded to trial. The jury found Mr. Sosa guilty of vehicular assault via all three of the charged alternatives: (1) operating a vehicle in a reckless manner, (2) operating a vehicle while under the influence of intoxicating liquor or drugs, and (3) operating a vehicle with disregard for the safety of others. At sentencing, the trial court ordered Mr. Sosa to pay a $1,041.90 "DUI fine" along with other fines and fees, including $179,280.32 in restitution. Clerk's Papers at 129. Mr. Sosa appeals.

## ANALYSIS

*Independent blood testing*

Law enforcement did not advise Mr. Sosa of the right to an independent blood alcohol test. Mr. Sosa claims his constitutional rights to due process and equal protection afforded him the right to be advised of this option. He also argues his trial counsel was ineffective for failing to raise this issue prior to trial and seek suppression of the blood

3

alcohol evidence. The success of Mr. Sosa's claims turn on whether, in fact, he had a right to be advised of an independent blood test pursuant to the law in effect at the time of his arrest in 2014. This is a matter of first impression in our courts.

Prior to 2013, Washington's implied consent law, RCW 46.20.308, specified that any person operating a vehicle within this state was deemed to have given consent to a blood or breath test. The statute also stated that any time a blood or breath sample was taken pursuant to the implied consent provision, the subject individual must be informed of the right to have additional tests administered by a qualified person of his or her choosing. Based on this context, our courts held the failure of a law enforcement officer to advise of independent testing rendered a blood or breath test unlawful and subject to exclusion at trial. *See, e.g., State v. Turpin*, 94 Wn.2d 820, 620 P.2d 990 (1980).

Washington's implied consent law changed after the U.S. Supreme Court's decision in *Missouri v. McNeely*, __ U.S. __, 133 S. Ct. 1552, 1556, 1568, 185 L. Ed. 2d 696 (2013). *McNeely* held the taking of a DUI suspect's blood without a warrant violates the suspect's rights under the Fourth Amendment to the United States Constitution and the exigency exception to the warrant requirement generally does not apply. The Supreme Court's decision in *McNeely* was limited to the context of blood tests, which are more intrusive than breath tests.

4

In response to *McNeely*, the legislature amended the implied consent statute, removing references to mandatory blood draws. ENGROSSED SECOND SUBSTITUTE S.B. 5912, § 36, 63d Leg., 2d Spec. Sess. (Wash. 2013); H.B. REP. ON ENGROSSED SECOND SUBSTITUTE S.B. 5912, at 6, 63d Leg., 2d Spec. Sess. (Wash. 2013). As it existed at the time of the arrest in this case, RCW 46.20.308 provided:

> (1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a test or tests of his or her breath for the purpose of determining the alcohol concentration . . . if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or any drug . . . . Neither consent nor this section precludes a police officer from obtaining a search warrant for a person's breath or blood.
> (2) The test or tests of breath shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor or any drug . . . . The officer shall inform the person of his or her right to refuse the breath test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506[1] . . . .
> (3) Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of felony driving while under the influence of intoxicating liquor or drugs under RCW 46.61.502(6), felony physical control of a motor vehicle while under the influence of intoxicating liquor or any drug under RCW

---

[1] Former RCW 46.61.506(6) (2010) stated: "The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his or her own choosing administer one or more tests in addition to any administered at the direction of a law enforcement officer. . . ."

5

46.61.504(6), vehicular homicide as provided in RCW 46.61.520, or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which there has been serious bodily injury to another person, a breath or blood test may be administered without the consent of the individual so arrested pursuant to a search warrant, a valid waiver of the warrant requirement, or when exigent circumstances exist.

Former RCW 46.20.308(1)-(3) (2013).[2] As noted above, RCW 46.20.308(2) expressly provided that the implied consent warning was required for breath testing; it makes no mention of blood testing.

Had Mr. Sosa's offense taken place prior to the 2013 amendment, he undoubtedly would have been entitled to advice about independent blood testing. But this is no longer so. Our case law addressing the implied consent warning has always been based on statutory principles, not constitutional grounds. *See Turpin*, 94 Wn.2d at 822-24; *State v. McNichols*, 128 Wn.2d 242, 248-51, 906 P.2d 329 (1995); *State v. Morales*, 173 Wn.2d 560, 568, 269 P.3d 263 (2012). Rights that exist purely as a matter of legislative grace can be taken away. Once the 2013 amendment eliminated references to blood testing, the right to advice in this context was also removed.

---

[2] The legislature deleted the former RCW 46.20.308(3) (2013) and enacted a similar provision, RCW 46.20.308(4), in 2015. *See* SECOND ENGROSSED SECOND SUBSTITUTE H.B. 1276, §5, 64th Leg., 2d Spec. Sess. (Wash. 2015).

6

The fact that a defendant has a constitutional right to investigate his or her case and develop evidence does not provide an independent basis for requiring an advisement about independent testing. This is particularly true in the context of a blood draw. Unlike breath samples, blood samples are stable and can be tested and retested at different points in time. *See* WAC 448-14-020. The failure of law enforcement to provide a defendant on-the-scene advice about the possibility of an independent laboratory test does not strip a defendant of the ability to perform such testing at a later date. There are no due process problems with eliminating this requirement.

Mr. Sosa argues that, regardless of the wording of the statute, he has an equal protection right to be advised of the possibility of independent testing. Because individuals subject to breath testing are entitled to advice about independent testing, he claims the same rule should apply to individuals subject to blood testing. When evaluating an equal protection claim, this court must first determine whether the individual claiming the violation is similarly situated with other persons. *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006). Without materially similar circumstances, there can be no complaint about disparate treatment.

Mr. Sosa cannot show he is similarly situated to individuals whose breath is tested for alcohol concentration, as required for an equal protection challenge. Blood and breath

7

testing are different for a variety of reasons. Legally, the two are different. Unlike a blood test, a breath test can be procured without judicial oversight, as part of a search incident to arrest. *State v. Baird*, 187 Wn.2d 210, 386 P.3d 239 (2016). Factually, breath is uniquely ephemeral. Unlike blood, a sample cannot simply be retested. *See, e.g., California v. Trombetta*, 467 U.S. 479, 482 n.3, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) (discussing challenges in preserving multiple samples). To further complicate matters, the manner in which a breath test is taken must meet rigid criteria, lest the results be unreliable. *See* RCW 46.61.506(4)(a). Given these circumstances, breath tests present a pressing need for a timely, competent retest in order to challenge the State's information. The same is simply not true in the context of blood samples. Individuals subjected to blood testing face different circumstances than those involved in breath testing. These differences warrant different statutory treatment.

*Additional claims of ineffective assistance of counsel*

Apart from his arguments regarding defense counsel's failure to challenge his blood test, Mr. Sosa claims he received ineffective assistance of counsel because defense counsel (1) failed to object to the admissibility of the PBT refusal when no *Frye*[3] hearing was held, and (2) failed to request WPIC 92.16, which instructs the jury to consider

---

[3] *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923).

8

whether a blood test was accurate and reliable. 11A WASHINGTON PRACTICE:
WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 92.16, at 296 (3d ed. 2008)
(WPIC).

This court reviews ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish ineffective assistance of counsel, Mr. Sosa must show (1) "defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness" and (2) "the deficient performance resulted in prejudice, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Failure to meet either prong of this test is dispositive of an ineffective assistance claim. *State v. Berg*, 147 Wn. App. 923, 937, 198 P.3d 529 (2008).

*PBT*

Mr. Sosa claims his counsel was ineffective for failing to object to the admissibility of his PBT refusal when no *Frye* hearing was held to test the reliability of PBTs. We are unpersuaded. Because the State never obtained a PBT, there was no need to determine reliability. Under Washington's implied consent law, an individual has a choice either to submit to a PBT or permit evidence of refusal at trial. *Baird*, 187 Wn.2d

9

at 226-28. There is not a third option, dependent on the reliability of the PBT. Because Mr. Sosa opted not to participate in the PBT, the State was entitled to elicit evidence of his refusal to take the test. *Id.* at 229. Defense counsel did not perform deficiently by failing to object to this evidence.

*WPIC 92.16*

Mr. Sosa argues he received ineffective assistance of counsel when defense counsel failed to request WPIC 92.16, which provides: "In determining the accuracy and reliability of a [breath] [blood] test, you may consider the testing procedures used, the reliability and functioning of a testing instrument, maintenance procedures applied to a testing instrument, and any other factors that bear on the accuracy and reliability of the test." WPIC 92.16, at 296 (alteration in original).

Even if counsel was deficient for not requesting this instruction, Mr. Sosa cannot show prejudice. Defense counsel repeatedly and unequivocally questioned the State's witnesses regarding the accuracy and reliability of the blood test. The jury heard all of this as well as defense counsel's closing argument, where he again reiterated his challenges to the blood test. The court instructed the jury that it was the sole judge of witness credibility and on the weight to give a witness's testimony. The court gave the jury several things to consider when weighing a witness's testimony. The court further

10

instructed that Mr. Sosa's BAC must have been shown by an accurate and reliable analysis of the blood. Finally, the court instructed the jury that it did not have to accept any expert witness's opinion. All of this shows the jury was aware it could consider defense counsel's challenges to the blood test in the manner contemplated by WPIC 92.16.

*Improper closing argument*

Mr. Sosa next argues the prosecutor improperly appealed to the jury's sympathy for the victim and his family during closing argument. Specifically, the prosecutor stated, without objection:

> [W]e have left ordinary negligence so far down the road in this case we can't even see it. We are way beyond that. . . . [I]s there really that much left to decide? [Sosa] admitted he was the driver of the Monte Carlo. He admitted . . . he caused the collision. He admitted that the collision caused [the victim] serious injuries.
>
> And as it turns out, we know from Dr. Field's testimony that [the victim] was a dead man if he hadn't been operated on. If Dr. Field hadn't operated on him, [the victim's daughter] would have lost her father at [age] 15, [the victim's wife] would not have a husband, and we would be here in a vehicular homicide trial and not vehicular assault.
>
> But fortunately, you know, this time it is not how it turned out.

4 Verbatim Report of Proceedings (VRP) (Sept. 14, 2015) at 483. Mr. Sosa contends this statement encouraged the jury to think of the impact on the family rather than focusing on the presented facts and elements of the charged crimes. Mr. Sosa also claims the

11

prosecutor made an improper reference to the possibility of future crimes.

Reference to the heinous nature of a crime and its effect on the victim is not necessarily improper. *State v. Claflin*, 38 Wn. App. 847, 849-50, 690 P.2d 1186 (1984). This is one such case. Mr. Sosa was charged with vehicular assault by three alternative means, all of which required the State to show substantial bodily harm to another. *See* RCW 46.61.522(1). Given the nature of this burden of proof, the State was entitled to discuss the nature of the victim's injuries. Under the evidence presented at trial, it was fair for the prosecutor to point out that the victim was so seriously injured he would have been a "dead man" if not for surgery. 4 VRP (Sept. 14, 2015) at 483. Nothing about the prosecutor's comments encouraged the jury to speculate about what might happen in the future should Mr. Sosa get behind the wheel. Nor was the jury encouraged to convict Mr. Sosa out of sympathy to the victim or his family. The fact that the prosecutor's comments did not generate an objection underscores our confidence that they did not come across as inflammatory during trial. Because the prosecutor's comments were not improper, Mr. Sosa is not entitled to relief.

*Legal financial obligations*

At sentencing, Mr. Sosa received a $1,041.90 "DUI fine." We agree with Mr. Sosa that no statutory basis exists for this assessment.

12

Under RCW 46.61.5055(1)(a)(ii), the court shall assess a fine of not less than $350 nor more than $5,000 against an individual who is "convicted of a violation of RCW 46.61.502 [Driving under the influence] or 46.61.504 [Physical control of a vehicle under the influence]." Mr. Sosa was not convicted of either of the listed offenses. While Mr. Sosa's assault conviction required proof of intoxication as defined by RCW 46.61.502, it did not require a conviction under that statute. RCW 46.61.522(1)(b). Mr. Sosa's statute of conviction specifically states it is punishable as a class B felony under the Washington Criminal Code's classification of crimes in chapter 9A.20 RCW. RCW 46.61.522(2). It does not cross reference RCW 46.61.5055 or any penalties under the motor vehicles statute, chapter 46 RCW. Nothing in the chapter 9A.20 RCW penalties pertaining to class B felonies requires imposition of a DUI fine.

The court's DUI fine was not based on any legislative authority. This aspect of the sentence must be reversed.

## APPELLATE COSTS

In his opening brief, Mr. Sosa requests that we not award costs to the State, even in the event it substantially prevails on appeal. The State opposes this request. On July 26, 2016, Mr. Sosa complied with this court's general order by filing a "report as to continued indigency and likely future inability to pay an award of costs." Gen. Order of Division

13

No. 33859-2-III
*State v. Sosa*

III, *In re the Matter of Court Administration Order re: Request to Deny Cost Award* (Wash. Ct. App. June 10, 2016). In his report, Mr. Sosa certifies that he relies on public assistance and has significant financial debts, including restitution to the victim. Given these circumstances, we grant Mr. Sosa's request to waive appellate costs.

## CONCLUSION

Mr. Sosa's conviction is affirmed. His sentence is reversed in part, and the matter is remanded so the trial court may strike Mr. Sosa's DUI fine.

_____
Pennell, J.

WE CONCUR:

_____       _____
Lawrence-Berrey, A.C.J.                Korsmo, J.

14