IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| CITY OF VANCOUVER, | No. 51202-5-II |
| Respondent, | |
| v. | |
| MELISSA NICOLE KAUFMAN, | PUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Melissa Kaufman was granted discretionary review of her municipal court conviction for driving under the influence (DUI). She argues that the trial court erred by admitting evidence of her refusal to submit to a preliminary breath test (PBT) and improper opinion testimony by a police officer. We agree and hold that the trial court erred in admitting evidence of Kaufman's refusal to submit to a PBT. We also accept the City of Vancouver's concession that the trial court erred in admitting improper opinion testimony, but hold that the City cannot prove beyond a reasonable doubt that the error was harmless. Accordingly we reverse and remand for further proceedings.

FACTS

At approximately 6:45 AM on March 11, 2016, Officer Keith Tyler of the Vancouver Police Department was patrolling within the city limits of Vancouver, Washington. Tyler observed Kaufman driving past his patrol car in an adjacent lane. Tyler visually approximated that Kaufman was driving between 25 and 28 miles per hour; the speed limit in that location was 20 miles per

hour.  Tyler turned his "warning" lights on, and Kaufman slowed her vehicle down.  Tyler then observed Kaufman move her vehicle into a turn lane without using her turn signal for at least 100 feet before she made the turn.  Tyler contacted Kaufman and asked for her license, registration, and proof of insurance.  Tyler did not smell an odor of intoxicants on Kaufman at this time.

When Tyler ran the registration of Kaufman's vehicle, he found that Kaufman had an outstanding misdemeanor warrant.  Tyler returned to Kaufman's vehicle and arrested her on the warrant.  The first time Tyler noticed an odor of intoxicants on Kaufman was when he placed her in handcuffs.  Kaufman was upset and crying at that point.  Tyler also noticed that her eyes were "a little bloodshot" and her eyelids were "a little droopy."  Clerk's Papers (CP) at 214.  Tyler decided he would begin a DUI investigation once they arrived at the jail.

At the jail, Tyler offered to administer a PBT, which is a test he uses "to establish probable cause."  *Id.* at 215.  Kaufman refused to take the test.  Tyler then asked Kaufman if she would be willing to take a series of voluntary standardized field sobriety tests (FSTs), and she refused.  Tyler read Kaufman her *Miranda*[1] rights and prepared a "Pre-arrest Observations" report.  CP at 220. Tyler reported that Kaufman's eyes were "watery and bloodshot," her speech was a little slow but "fair," her face was "flushed," her coordination was "fair," she displayed mood swings, and her level of impairment was "slight."  *Id.* at 220-21.  Tyler then read Kaufman the implied consent warning for breath and asked Kaufman if she would submit to a Datamaster breath test.  Kaufman refused.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The City charged Kaufman with DUI.[2]  Kaufman's case proceeded to trial in Vancouver Municipal Court.  Kaufman brought a pretrial motion to exclude evidence of her refusal to submit to the PBT and the FST but the court ruled this evidence was admissible.[3]

At trial, Tyler confirmed that Kaufman was *not* arrested for DUI.  During an offer of proof made outside the presence of the jury, Tyler admitted that he did not have probable cause to believe Kaufman had driven under the influence of intoxicants at the time of her arrest on the unrelated warrant.  Tyler also admitted that he had to make a decision "with very little information" because his observations at the scene were insufficient to support probable cause and Kaufman refused to perform the tests normally administered during a DUI investigation.  *Id.* at 249.

Tyler testified that Kaufman refused to submit to either the PBT or the Datamaster breath test or to perform FSTs.  During cross-examination, Tyler was asked whether he gathered any further evidence of Kaufman's impairment at the jail, and he answered, "Any new no."  *Id.* at 251. He said his investigation at the jail "reinforced" his observations about Kaufman's odor of alcohol, her bloodshot and watery eyes, and her flushed face.  *Id.*

On redirect examination, the City had the following exchange with Tyler:

[Prosecutor]:  Counsel asked you if you [gathered any new] evidence . . . once the defendant was at jail.  Is it evidence if someone's under the influence of alcohol if they refuse to do the field sobriety tests?
[Defense Counsel]:  Objection.
[Court]:  Overruled.

---

[2] Kaufman was also charged with and pleaded guilty to one count of operating a vehicle without using ignition interlock device as required by RCW 46.20.740(2), but this conviction is not at issue in this appeal.

[3] Although Kaufman objected to the admission of her refusal to perform FSTs, she does not raise this issue on appeal.

[Prosecutor]: So if you ask someone to do the field sobriety tests and they refuse to do that does that indicate . . . something to you?
[Tyler]: Yes it usually shows me that they are under the influence because they don't want the tests to fail.
[Prosecutor]: Same thing you offered the defendant PBT to see if there was alcohol in her system, she refused that, what does that indicate to you?
[Tyler]: That she didn't want to take the tests because the result would show that she's under the influence.
[Prosecutor]: And last thing is you offered the defendant a chance to give a breath sample on the BAC Datamaster and she forego giving a sample knowing her license would be suspended?
[Tyler]: Yes.
[Prosecutor]: Is that further evidence to you that she was under the influence on that date?
[Tyler]: It's usually an indication yes.

*Id*. at 251-52.

The City repeatedly commented on Kaufman's refusal to submit to the PBT, FSTs, and the Datamaster breath test in its opening statement and closing arguments. The City suggested that Kaufman's refusal to perform these tests was the primary evidence that Kaufman had driven under the influence of intoxicants.

The jury was given the following instructions related to DUI:

A person commits the crime of driving under the influence when he or she drives a motor vehicle while he or she is under the influence of or affected by intoxicating liquor.

*Id.* at 89; 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 92.01, at 290 (4th ed. 2016) (WPIC).

A person is under the influence of or affected by the use of intoxicating liquor if the person's ability to drive a motor vehicle is lessened in any appreciable degree.
It is not unlawful for a person to consume intoxicating liquor and drive a motor vehicle. The law recognizes that a person may have consumed intoxicating liquor and yet not be under the influence of it.

CP at 91; WPIC 92.10, at 304.

4

The jury found Kaufman guilty of DUI.[4]  Former RCW 46.61.502 (2013).

Kaufman appealed her conviction to the superior court.  The superior court affirmed, holding that the PBT refusal evidence was properly admitted under *State v. Baird*, 187 Wn.2d 210, 386 P.3d 239 (2016), and *State v. Mecham*, 186 Wn.2d 128, 380 P.3d 414 (2016).  The court also held that Tyler's opinion on the guilt of the defendant was improper under *State v. Black*, 109 Wn.2d 336, 745 P.2d 12 (1987), but concluded that the admission of the improper opinion testimony was harmless beyond a reasonable doubt due to the overwhelming untainted evidence of guilt.  We granted discretionary review on the preceding issues.

DISCUSSION

Kaufman argues that the trial court committed reversible error by admitting evidence of her refusal to take the PBT because she had a constitutional right to refuse to take this test and that admission of her refusal to take the test violated the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution.  Kaufman also argues that the trial court erred when it allowed Officer Tyler to opine that Kaufman's refusal to perform FSTs, the PBT, and the Datamaster breath test demonstrated her consciousness of guilt.  We agree on both grounds.

I.  STANDARD OF REVIEW

RALJ 9.1 governs a review of the district court's decision, whether by us or by the superior court.  *State v. McLean*, 178 Wn. App. 236, 242, 313 P.3d 1181 (2013).  The decision of the superior court on appeal is subject to discretionary review.  RALJ 9.1(h); RAP 2.3.

---

[4] The jury also returned a special verdict finding that Kaufman refused to submit to a breath test that was requested by a law enforcement officer.

"[I]f a trial error is of constitutional magnitude, prejudice is presumed and the State bears the burden of proving it was harmless beyond a reasonable doubt." *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013). In evaluating whether a constitutional error is harmless, we use the overwhelming untainted evidence test. *State v. Watt*, 160 Wn.2d 626, 635-36, 160 P.3d 640 (2007). We will find the error harmless only if we are satisfied beyond a reasonable doubt that the untainted evidence presented to the jury is so overwhelming that it "necessarily leads to the same outcome." *State v. Mayer*, 184 Wn.2d 548, 566, 362 P.3d 745 (2015). In examining the evidence, we look only to the untainted evidence to determine whether the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. *Watt*, 160 Wn.2d 636; *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985).

## II. PBT REFUSAL EVIDENCE

Kaufman argues that she had a constitutional right to refuse the PBT and that the trial court violated the Fourth Amendment and article I section 7 in admitting evidence of her refusal to submit to a PBT as evidence of guilt at trial. The City argues that Kaufman did not have a constitutional right to refuse the PBT because it occurred "post-arrest" as a search incident to her arrest, thus it was admissible evidence of guilt at trial. We agree with Kaufman.

### A. LEGAL PRINCIPLES

We review constitutional issues de novo. *Mecham*, 186 Wn.2d at 137. A breath test is a search under the Fourth Amendment and under article I, section 7 of the Washington Constitution. *State v. Garcia-Salgado*, 170 Wn.2d 176, 184, 240 P.3d 153 (2010). Generally, "[w]e presume that a warrantless search violates these constitutional provisions," and the State bears the burden

to prove that one of the narrowly drawn exceptions to the warrant requirement applies. *Baird*, 187 Wn.2d at 218.

Significant to this case, when a person has a constitutional right to refuse a search, admission at trial of the person's refusal to submit to the search violates the Fourth Amendment because it improperly penalizes the defendant for the lawful exercise of a constitutional right. *State v. Gauthier*, 174 Wn. App. 257, 267, 298 P.3d 126 (2013). Thus, if Kaufman had a constitutional right to refuse the search of her breath by use of a PBT because the test, if taken, would not have fallen under any recognized exception to the warrant requirement, her refusal to take such a test was inadmissible at trial.

In *Baird*, our Supreme Court relied on the United States Supreme Court's opinion in *Birchfield v. North Dakota*, ___ U.S ___, 136 S. Ct. 2160, 2185, 195 L. Ed. 2d 560 (2016), to hold that the Fourth Amendment permits evidentiary breath tests[5] as a search incident to arrest for DUI. *Baird*, 187 Wn.2d at 222. "Because a breath test is a permissible search incident to arrest, 'the Fourth Amendment did not require officers to obtain a warrant prior to demanding the test, and [petitioner] had no right to refuse it.'" *Id.* (alteration in original) (quoting *Birchfield*, 136 S. Ct. at 2186).

Thus, a driver does not have a constitutional right to refuse a breath test where either the test or the request to an arrestee to submit to the test is authorized by a warrant or a recognized exception to the warrant requirement, such as a search incident to arrest. *Id.* And in the

---

[5] The *Baird* court does not explicitly reference "evidentiary" breath tests, but its analysis pertains to breath tests only under the implied consent statute, which are evidentiary breath tests. 187 Wn.2d at 219; former RCW 46.20.308(2) (2015).

circumstance where a driver lacks the constitutional right to refuse a breath test, *Baird* affirmed the continued viability of our implied consent statute, which grants drivers a *statutory* right to refuse to submit to a breath test and attaches penalties to the exercise of the statutory right to refuse (such as use of a driver's refusal at a subsequent trial). *Id.* at 223-28.

A "breath test" under former RCW 46.20.308(2) (2015) includes an evidentiary breath test, such as the Datamaster breath test, but it does not include a PBT.[6] Former RCW 46.61.506 (2015). The use of a PBT is governed exclusively by the Washington Administrative Code. Ch. 448-15 WAC. A PBT is voluntary, and "participation in it does not constitute compliance with the implied consent statute (RCW 46.20.308)." Former WAC 448-15-020 (2015). A PBT may only be used for establishing that a person has consumed alcohol and "establishing probable cause to place a person under arrest for alcohol related offenses." Former WAC 448-15-020(1).

B. KAUFMAN'S PBT REFUSAL WAS INADMISSIBLE

Kaufman contends that she had a constitutional right to refuse the PBT and that admission of her refusal to submit to the PBT, therefore, impermissibly penalized her exercise of her constitutional right to refuse. As Kaufman correctly observes, Tyler's request to Kaufman that she submit to the PBT cannot be justified under the search incident to arrest exception because she was not arrested for DUI.

The City asks us to make the "necessary inference" that Kaufman was arrested for an outstanding warrant *and* a DUI and hold that Kaufman's refusal to take the PBT occurred

---

[6] "Analysis of the person's blood or breath to be considered valid under the provisions of [driving under the influence] shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist." Former RCW 46.61.506(3).

subsequent to a custodial arrest for DUI and thereby fell within the search incident to arrest exception. Br. of Resp't at 6. For reasons we discuss below, we decline to draw this inference.

Implicit in the City's argument, however, is the acknowledgement that if Kaufman's arrest was not based either entirely or partially on suspicion of DUI, the request that she take the PBT cannot be justified under the search incident to arrest exception, and her refusal to take the PBT would therefore be inadmissible at trial.[7] On this particular point, we agree. This premise is not only supported by the language used in both *Baird* and in *Birchfield*, on which *Baird* relies, but also by the logical application of the search incident to arrest rule. *Birchfield*, 136 S. Ct. at 2185; *Baird*, 187 Wn.2d at 222.

In *Baird*, the court stated, "The Supreme Court of the United States has recently decided this question for us: breath tests conducted *subsequent to an arrest for DUI* fall under the search incident to arrest exception to the warrant requirement." 187 Wn.2d at 222 (emphasis added). And the United States Supreme Court stated in *Birchfield*, "Having assessed the effect of BAC tests on privacy interests and the need for such tests, we conclude that the Fourth Amendment permits warrantless breath tests *incident to arrests for drunk driving*." 136 S. Ct. at 2184 (emphasis added). The Court further stated, "[W]e conclude that a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving. As in all cases involving reasonable searches incident to arrest, a warrant is not needed in this situation." *Id.* at 2185.

---

[7] Kaufman did not argue at the trial court and does not argue on appeal that her refusal to submit to the evidentiary breath test should not have been admitted into evidence because it was not the product of a search incident to arrest for DUI. As such, evidence of her refusal to perform the evidentiary breath test is not before us.

It makes sense that both our Supreme Court and the United States Supreme Court would limit a search of an arrestee's breath in this manner. The search incident to arrest exception has twin justifications: protecting the safety of officers conducting the arrest and preserving evidence that might be present on the person of the arrestee so as to prevent its concealment or destruction. *Riley v. California*, 573 U.S. 373, 383, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014); *State v. Byrd*, 178 Wn.2d 611, 617-18, 310 P.3d 793 (2013). The exception has been characterized as categorical, meaning the legality of the search flows from the fact of the arrest alone, and the government need not make an individualized showing in each case why the search was necessary. *United States v. Robinson*, 414 U.S. 218, 225, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); *Byrd*, 178 Wn.2d at 618.

The search, however, must still be reasonable, just as all searches must be reasonable to pass constitutional muster under the Fourth Amendment. *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006).

Although the search incident to arrest exception is indeed categorical, searching an arrestee's breath for evidence of alcohol concentration is qualitatively different than a typical search incident to arrest in which the officer looks for tangible, confiscable items that may be present on the arrestee's person or within his effects. The search incident to arrest exception has historically involved tangible items and there has never been a nexus requirement in which the officer would need to tailor the search in such a way that it could discover, in addition to items that might pose a danger, evidence of *only* the crime of arrest. Application of a nexus rule in an ordinary search incident to arrest scenario would be unworkable. An officer would likely not know whether an item found on an arrestee is evidence of the crime of arrest until *after* it is discovered.

10

This is not so in the context of breath testing. It is immediately apparent to an officer at the moment of arrest whether a test of a bodily constituent such as deep lung air is necessary because it would either pose a danger to the officer if not collected or would constitute evidence of the crime of arrest. There would never be a need, for instance, for an officer to search an arrestee's breath incident to an arrest for a crime such as harassment or forgery. And it certainly cannot be said that deep lung air, as it exists in the body, poses a danger to the safety of an officer if not collected and tested for alcohol.

Applying these principles, it is necessary to limit the search of a person's breath incident to arrest, for breath alcohol concentration, to crimes such as driving under the influence or some other driving offense involving alcohol consumption as an element, such as a minor operating a motor vehicle after consuming intoxicants. A search of an arrestee's breath incident to an arrest on an unrelated offense at a time when the officer had not even begun a DUI investigation and lacked anything even approaching probable cause to arrest for DUI, as occurred in this case, cannot be permitted. And if the search of Kaufman's breath was not permitted under the search incident to arrest exception or any other exception to the warrant requirement, she retained a constitutional right to refuse to consent to the search and her refusal to offer her consent cannot be used as evidence against her at trial. *Baird*, 187 Wn.2d at 221-22; *Gauthier*, 174 Wn. App. at 267.

Having effectively conceded that the arrest in this case must have been based in whole or in part for DUI in order for the PBT refusal to be admissible, the City centers its argument on the premise that the arrest in this case was, in fact, for DUI *as well as* for Kaufman's outstanding misdemeanor warrant. To do this, the City misrepresents the record.

11

Contrary to the City's argument, Tyler testified at several points that the arrest in this case was *not* for DUI. Tyler admitted that he did not have probable cause for an arrest for DUI at the time he arrested Kaufman on the warrant. We do not draw an "inference" about what offense Kaufman was arrested for when the record plainly shows it was not for DUI.[8]

In support of its argument that the trial court did not err in admitting Kaufman's refusal to submit to the PBT, the City additionally relies on cases and principles that govern evidentiary breath testing under the implied consent statute. In so doing, the City ignores that the PBT is exclusively governed by ch. 448-15 WAC, not the implied consent scheme.

Relying on *State v. Smith*, 130 Wn.2d 215, 222, 922 P.2d 811 (1996), the City concedes that unlike an evidentiary breath test, PBT results are inadmissible at trial.[9] But the City cites *State v. Cohen*, 125 Wn. App. 220, 224, 104 P.3d 70 (2005), to argue that admissibility of a *refusal to*

---

[8] We note that even if the arrest in this case had been for DUI, it is questionable whether the City could rely on the search incident to arrest exception for admission of Kaufman's refusal to submit to the PBT. Former WAC 448-15-020 permits the use of the PBT to determine that a subject has consumed alcohol *and* to establish probable cause to place a person under arrest for alcohol related offenses. However, a PBT performed to establish probable cause for arrest is administered *before* an arrest. In contrast, a search incident to arrest must occur *subsequent* to the arrest. *Baird*, 187 Wn.2d at 222; *State v. O'Neill*, 148 Wn.2d 564, 585, 62 P.3d 489 (2003); *Byrd*, 178 Wn.2d at 617 ("'a search may be made of the *person* of the arrestee by virtue of the lawful arrest'") (quoting *Robinson*, 414 U.S. at 224). A search that precedes an arrest, as a PBT *must* be conducted under former WAC 448-15-020, cannot be justified under the search incident to arrest exception to the warrant requirement.

[9] *Smith* held that "in the absence of a *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923),] hearing on the PBT, or specific approval of the device and its administration by the state toxicologist, the result garnered from the PBT is inadmissible for any purpose." 130 Wn.2d at 222. The state toxicologist has approved two PBT instruments for the uses outlined in former WAC 448-15-020. *See* former WAC 448-15-010 (2008). The City produced no evidence that the instrument it intended to use for Kaufman's preliminary breath test was one of the two instruments approved for use by the state toxicologist under former WAC 448-15-010.

*submit* to a PBT is not dependent on whether the results of the test would have been admissible at trial. The City's reliance on *Cohen* is misplaced.

In *Cohen*, the defendant refused to provide an evidentiary breath sample. 125 Wn. App. at 222. At the time of her refusal, the Datamaster instrument on which Cohen provided her breath sample had not been subjected to a valid quality assurance procedure, which would have rendered a test result inadmissible at her trial. *Id.* Cohen argued that because a test result produced by the Datamaster would have been inadmissible at trial, her refusal to submit to the Datamaster test was likewise inadmissible at trial. *Id.* at 225. In rejecting Cohen's claim, the court focused on Cohen's informed refusal to submit to the test rather than whether the test results would have been admissible. Stated another way, the court relied on the implied consent scheme—a statutory scheme that does not apply to testing by use of a PBT. *Id.* at 224-25. *Cohen* is inapposite to this case.

The City next relies on *State v. Sosa*, 198 Wn. App. 176, 185, 393 P.3d 796, *review denied*, 188 Wn.2d 1022 (2017), to support its proposition that we should treat PBT refusal evidence the same as evidentiary breath test refusal evidence and hold that such evidence is admissible at trial. In *Sosa*, trial counsel failed to object to the admission of the defendant's PBT refusal. *Id*. On appeal, Sosa claimed ineffective assistance of counsel, arguing that the refusal to take the PBT should not have been admitted because the PBT has not been found to satisfy the standard for admission of scientific evidence under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). *Sosa*, 198 Wn. App. at 185.

Division Three of this court held that because the State never obtained a PBT result, "there was no need to determine reliability." *Id*. Citing *Baird*, the court went on to say, "Under

Washington's implied consent law, an individual has a choice either to submit to a PBT or permit evidence of refusal at trial. . . . There is not a third option, dependent on the reliability of the PBT." *Id.*

We disagree with *Sosa* because PBTs are governed by ch. 448-15 WAC, not the implied consent statute. Furthermore, reliance on the implied consent statute is erroneous because the warnings that must be provided to a subject prior to administering the test are entirely different. Thus, the "choice" referenced in *Sosa* is no choice at all because the implied consent warning is not given prior to the administration of the PBT. It is significant that prior to administration of a PBT, an officer is not required to advise a subject that the refusal to submit to a PBT may be used as evidence in a subsequent criminal trial as the officer would be required to advise in the context of Datamaster testing. *See* former WAC 448-15-030 (2008).

Additionally, submission to a PBT does not constitute compliance with the implied consent statute. Former WAC 448-15-020. Thus, if a driver provides a sample for the PBT, the driver is not deemed to have taken the evidentiary breath test. Likewise, if the driver takes the PBT but later refuses to take the evidentiary breath test, the driver would not escape the statutory consequences of the implied consent statute for the refusal. On this point we note that an officer may utilize the PBT in the determination of probable cause only if the procedures outlined in former WAC 448-15-030 are followed. Among other requirements, former WAC 448-15-030 requires the officer to advise the subject that the test is voluntary *and* "that it is not an alternative to any evidential breath alcohol test." Former WAC 448-15-030(1).

Although Tyler testified that he told Kaufman the test was voluntary, the City presented no evidence that Tyler advised Kaufman that the PBT was not an alternative to any evidentiary breath

14

test.  Therefore, the admission of the refusal in this case would be precluded based on the City's failure to show compliance with former WAC 448-15-030.  Moreover, even if we assume that a PBT is properly likened to an evidentiary breath test, Kaufman's refusal to take an evidentiary breath test would not be admissible in the absence of the officer giving the required statutory (implied consent) warning, which Tyler did not do.  *See generally State v. Elkins*, 152 Wn. App. 871, 220 P.3d 211 (2009); *Medcalf v. Dep't of Licensing*, 83 Wn. App. 8, 920 P.2d 228 (1996), *aff'd*, 133 Wn.2d 290, 944 P.2d 1014 (1997).  We decline to follow *Sosa*.[10]

Because the use of PBTs is governed by ch. 448-15 WAC and *not* the implied consent statute, the City's reliance on cases involving implied consent breath testing to justify the admission of the PBT refusal in this case is unpersuasive.  Refusal of an evidentiary breath test is admissible evidence against the defendant under the implied consent statute only if the defendant *lacked a constitutional right to refuse the test*.  *Baird*, 187 Wn.2d at 222.  In that instance, the State may comment on the refusal because the driver is not exercising a constitutional right in refusing to take the breath test.  *Id*.  Rather, the driver is merely exercising a *statutory* right to refuse, and the statute which grants a driver the right to refuse the test—the implied consent statute—further provides that said refusal is admissible in evidence against the driver in the event of a trial.  *Id.* at 223.

We hold that where a custodial arrest is based on an offense unrelated to DUI or some other driving offense in which alcohol consumption is not an element, a search of an arrestee's breath for alcohol concentration does not fall within the search incident to arrest rule set forth in *Baird* and *Birchfield*.  Because a PBT does not fall under the search incident to arrest exception in this

---

[10] The *Sosa* court's reliance on *Baird* is unpersuasive because *Baird* did not discuss the PBT.

case, Kaufman had a constitutional right to refuse the PBT and evidence of her exercise of her constitutional right to refuse this test was improperly admitted.

Furthermore, this constitutional error was not harmless. In order to demonstrate this error was harmless beyond a reasonable doubt, the City must show that the overwhelming untainted evidence in this case necessarily leads to a finding of guilt. *Watt*, 160 Wn.2d 636. We conclude the City has not met this burden.

Tyler stopped Kaufman because she was traveling slightly over the speed limit and because, after entering the left hand turn lane, she failed to signal her left turn at least 100 feet prior to making the turn. Tyler did not see Kaufman swerve or weave. Tyler did not make note of Kaufman's odor of intoxicants until his second contact with her, and although he noted her watery and bloodshot eyes, he also noted that she was crying. At trial, the City relied heavily on the inference of guilt arising from Kaufman's refusal to perform any tests. This leads us to conclude that the City has not shown that the untainted evidence in this case is so overwhelming that it necessarily leads to a finding of guilt.

## III. THE OFFICER'S IMPROPER OPINION TESTIMONY

Kaufman contends that the trial court committed reversible error by allowing improper opinion testimony when Officer Tyler commented on Kaufman's alleged consciousness of guilt in refusing to perform FSTs, the PBT, and the Datamaster breath test. Kaufman argues that Tyler's improper testimony violated her constitutional right to a jury trial and the City cannot show that this error was harmless beyond a reasonable doubt. Because this issue may recur on remand, we address this claim. We agree with Kaufman.

During Tyler's testimony, the City asked Tyler, "Is it evidence [that] someone's under the influence of alcohol if they refuse to do the field sobriety tests?" CP at 251-52. Tyler responded by stating that if someone refuses to do the field sobriety tests, "it usually shows me that they are under the influence because they don't want the tests to fail." *Id.* at 252. When the City asked Tyler what Kaufman's refusal to take the PBT indicated to him, he responded that it indicated that "she didn't want to take the tests because the results would show that she's under the influence." *Id.* When asked if someone refusing to provide a breath sample on the Datamaster breath test is further evidence the person is under the influence, Tyler responded, "[I]t's usually an indication yes." *Id.*

The City concedes this testimony was improper, and we accept the City's concession. "Generally, no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial to the defendant 'because it invad[es] the exclusive province of the [jury].'" *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (internal quotation marks omitted) (alteration in original) (quoting *Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993)).

Some opinions, "particularly expressions of personal belief, as to the guilt of the defendant, the intent of the accused, or the veracity of witnesses," are clearly inappropriate in criminal trials. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). Improper opinion testimony from a law enforcement officer may be especially prejudicial because the officer's testimony "often carries a special aura of reliability." *Demery*, 144 Wn.2d at 765.

Here, the parties agree that Tyler's opinion testimony was improper and also agree that the error is constitutional. But the City argues that this error was harmless beyond a reasonable doubt because Tyler's testimony was "based on his training and experience" and the evidence presented and his testimony were simply explaining why someone may refuse to comply with a DUI investigation, which is a "straight-forward interpretation" and "any lay person could easily come up with the same inference." Br. of Resp't at 12.

In other words, despite conceding that Tyler's testimony was improper, the City predicates its harmless error argument on the idea that the testimony was *not*, in fact, improper. However, because we have accepted the City's concession, all that remains is for us to determine whether the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. *Watt*, 160 Wn.2d at 636.

This error, like the erroneous admission of Kaufman's refusal to submit to the PBT, warrants reversal. As noted above, at trial the City relied heavily on the inference of guilt arising from Kaufman's refusal to perform any tests, which was bolstered by Tyler's improper and prejudicial opinion testimony. Neither the City's untainted evidence pointing to Kaufman's intoxication nor the City's untainted evidence tending to show that Kaufman exhibited impaired driving, was so overwhelming that it necessarily leads to a finding of guilt.

The City has not demonstrated the constitutional errors in this case were harmless beyond a reasonable doubt.

CONCLUSION

We reverse Kaufman's conviction for DUI because the trial court erred in admitting evidence that Kaufman refused to take the PBT and erred in admitting improper opinion testimony. The City has not shown these constitutional errors were harmless beyond a reasonable doubt. We remand for further proceedings.

CRUSER, J.

We concur:

WORSWICK, P.J.

GLASGOW, J.