# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58467-1-II |
| Respondent, | |
| v. | |
| JEREMY IAN FRIEDAY, | PUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Jeremy I. Frieday was arrested for felony driving under the influence (DUI) and a failure to have an ignition interlock device (Frieday was required to have this type of device installed in his car as a consequence of several past DUI convictions).  Frieday attempted to have the two charges severed, but the trial court denied his request.

The State's initial charging document alleged only one specific alternative for felony DUI, namely that Frieday drove a vehicle while "under the influence of or affected by" intoxicating liquor.  But at trial, another alternative for felony DUI was added to the trial court's instructions; the jury was instructed that "to convict" Frieday of felony DUI, the State could prove either that he was "affected by" intoxicating liquor (the charged alternative) or that he had sufficient alcohol in his body to have an alcohol concentration of 0.08 or higher (an added alternative).  A special questionnaire asked the jury in separate questions if these two alternatives were proved.  The jury answered, "Yes," to both alternatives.

Following Frieday's conviction, the trial court decided that several of Frieday's prior out-of-state convictions from Oregon were comparable to a Washington offense and included them in Frieday's offender score.

Frieday argues that the trial court erred by (1) instructing the jury on an uncharged felony DUI alternative, (2) denying his motion to sever the felony DUI charge from the ignition interlock charge, and (3) finding two of his prior Oregon convictions to be comparable to a Washington offense and including them in his offender score. In a supplemental brief, Frieday makes two additional arguments related to the comparability of his out-of-state convictions, contending that a recent United States Supreme Court case, *Erlinger v. United States*, 602 U.S. 821, 835, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024), requires a jury, not a judge, to make these comparability decisions.

We reject Frieday's arguments and affirm.

FACTS

I. BACKGROUND

In the early morning hours of July 4, 2020, Trooper Steven Spaude of the Washington State Patrol was on duty when he observed Frieday's car swerving. The trooper decided to follow Frieday, who eventually crossed into the oncoming lane of traffic momentarily. Trooper Spaude activated his emergency lights, but instead of pulling over, Frieday continued to drive. Trooper Spaude then activated his siren. Frieday still did not stop for a minute and a half until he arrived in his driveway.

After Frieday arrived in his driveway, he got out of his car and began to stumble towards Trooper Spaude. The trooper commanded Frieday to stop, but Frieday continued to approach.

2

Trooper Spaude smelled alcohol emanating from Frieday and observed that he had watery bloodshot eyes and poor coordination. Frieday declined to take field sobriety tests. Trooper Spaude then arrested Frieday.

After Frieday was transported to the state patrol office, he refused to take a breath test. As a result, Trooper Spaude requested, and was granted, a search warrant to take a sample of Frieday's blood. Eventually, Frieday's blood was tested by the Washington State Patrol Toxicology Lab.

As part of his investigation, Trooper Spaude discovered that Frieday's driver's license was revoked and that Frieday was required to have an ignition interlock device. But on the day Frieday was arrested, his car did not have an ignition interlock device.

The State charged Frieday by information, alleging felony DUI, ignition interlock violation, third degree driving while license suspended, and failure to obey an officer. For the felony DUI count, the information alleged one specific alternative, namely that Frieday drove "a vehicle while under the influence of or affected by intoxicating liquor or any drug . . . ." Clerk's Papers (CP) at 5. The State never amended the information to add any other potential alternatives for felony DUI.

II. FRIEDAY'S MOTIONS TO SEVER

In a written pretrial motion, Frieday broadly sought to sever all four counts in order to have four separate trials. Frieday argued that the risk of prejudice outweighed any benefit to judicial economy by having the offenses joined. The trial court acknowledged that although there would be some prejudice, a single trial would not be so manifestly prejudicial as to outweigh the concern for judicial economy. The trial court denied Frieday's motion.

Immediately after the trial court denied Frieday's written motion, Frieday orally remade his motion, except he focused solely on the ignition interlock violation charge. Frieday argued that failing to sever that specific count from his felony DUI charge would be especially prejudicial because it was common knowledge that ignition interlocks were related to DUIs. The trial court did not "disagree" with Frieday's analysis, but it believed that the prejudice could be alleviated by an instruction, which told the jury to consider evidence about an ignition interlock device only for that particular count and not for any other reason. Verbatim Rep. of Proc. (VRP) at 92. The trial court again denied Frieday's motion to sever.

Later, in the course of jury selection, several potential jurors expressed the belief that the presence of an ignition interlock device would mean it was more likely that a defendant was guilty of DUI. At that point, Frieday moved for a mistrial or, in the alternative, to renew his motion for severance specific to the ignition interlock count, contending that the jury was "polluted." VRP at 224. The State responded that other jurors had said an ignition interlock did not automatically mean that the person was guilty of a DUI and that any prejudice could still be alleviated by an instruction that the jury should consider each count separately. The trial court denied Frieday's motion, stating that it disagreed that the jury was "polluted" and that jury instructions could avoid the risk of prejudice. VRP at 226.

The case proceeded to opening statements and trial testimony.

III. TRIAL

Trooper Spaude testified consistently with the facts set forth above. The trooper also gave the opinion that based on his training and experience, Frieday was "obviously intoxicated" on the

morning of the arrest. VRP at 349. A video from Trooper Spaude's dashboard camera was admitted into evidence and played at trial.[1]

A forensic scientist from the Washington State Patrol Toxicology Lab testified about the testing of Frieday's blood sample and said that the sample had a blood alcohol level of 0.21. During the forensic scientist's testimony, defense counsel challenged the testing documents based on chain of custody grounds. In response to questioning, the forensic scientist was able to identify only one of the signatures on the request for testing and could not speak to the details of how the request arrived at the lab.

Frieday did not testify and the defense did not offer any evidence.

## IV. JURY INSTRUCTIONS AND CLOSING ARGUMENTS

Following the presentation of evidence, the trial court instructed the jury. With respect to the felony DUI count, the "to convict" instruction included an alternative not included in the information. Jury instruction 8 stated that "to convict" Frieday of felony DUI, the State could prove either that he was "affected by" intoxicating liquor (the alternative included in the information) or that he had sufficient alcohol in his body to have an alcohol concentration of 0.08 or higher (an alternative *not* included in the information).[2] CP at 65. The same instruction also included reference to the State's need to prove that Frieday had prior convictions for predicate

---

[1] The video is not contained in the appellate record, but a transcript of the audio is contained in the Verbatim Report of Proceedings.

[2] A separate jury instruction (instruction 7) defined felony DUI by referencing both of these alternatives.

offenses (necessary to make the DUI count a felony). Jury instruction 8 read, in relevant part, that

the State had to prove,

> (2) That the defendant at the time of driving a motor vehicle
>> (a) was under the influence of or affected by intoxicating liquor or any drug; or
>>
>> (b) had sufficient alcohol in his body to have an alcohol concentration of 0.08 or higher within two hours after driving as shown by an accurate and reliable test of the defendant's blood; and
>
> (3) That the defendant
>> (a) has been previously convicted of a violation of RCW 46.61.522(1)(b); or
>>
>> (b) has been previously convicted of RCW 46.61.502(6)(b)(ii).

CP at 65.

Regarding the two alternative bases for DUI in (2)(a) and (b) above, the jury was given a

special verdict form to complete if the jury found Frieday guilty of felony DUI. The special verdict

form posed two questions, one for each of the alternatives contained in the "to convict" instruction.

The first question asked the jury whether Frieday was "under the influence of or affected by

intoxicating liquor or any drug?" CP at 51. The second question asked the jury whether Frieday

had "sufficient alcohol in his body to have an alcohol concentration of 0.08 or higher within two

hours after driving as shown by an accurate and reliable test of [Frieday's] blood?" CP at 51.

An additional instruction told the jury that in order to answer any question on the special

verdict form "yes," the jury must unanimously be satisfied beyond a reasonable doubt that "yes"

was the correct answer.[3] CP at 80. The jury instructions also generally told the jury that a separate

---

[3] Jury instruction 22 stated in relevant part:

> If you find the defendant guilty of this crime, you will then use the special verdict form and fill in the blank with the answer "yes" or "no" according to the decision

crime was charged in each count, that it must decide each count separately, and that the jury's verdict on one count should not control its verdict on any other count.

Finally, the jury instructions included a stipulation as to the prior conviction element of felony DUI. Jury instruction 11 told the jury that Frieday had been previously convicted of a violation of RCW 46.61.522(1)(b) and a violation of RCW 46.61.502(6)(b)(ii). The instruction prohibited the jury from using the stipulation for any other purpose aside from the prior conviction element.

Following the trial court's instructions to the jury, the parties gave their closing arguments. With respect to the felony DUI count, the State argued both alternatives included in the "to convict" instruction, stating that a person commits the crime of felony DUI when the person "drives a motor vehicle while under the influence of or affected by intoxicating liquor or any drug *or while he has sufficient alcohol in his body to have an alcohol concentration of .08 or higher within two hours of driving*, as shown by an accurate and reliable test of the person's blood . . . ." VRP at 408 (emphasis added).

Frieday then began his closing argument. Defense counsel argued that the State did not prove beyond a reasonable doubt that Frieday was driving under the influence of or affected by alcohol. Although counsel acknowledged that Frieday momentarily entered into the oncoming lane of traffic, counsel argued that Frieday's driving was otherwise "good" based on the trooper's dashboard camera video footage. VRP at 414. Additionally, counsel argued that the blood test

---

you reach. In order to answer the special verdict form "yes," you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. . . .

CP at 80.

evidence was compromised by chain of custody issues because the forensic scientist could not explain how Frieday's blood got to her lab and she could not recognize all of the signatures of the people that signed the request for the blood test. As for the ignition interlock violation charge, counsel said very little, stating, "I'm not gonna talk a whole lot about that . . . ." VRP at 411.

V. VERDICT, SENTENCING, AND APPEAL

The jury found Frieday guilty on all counts. On the special verdict form that asked the jury about the alternatives for the felony DUI count, the jury answered, "Yes," to the question relating to the charged alternative ("under the influence of or affected by intoxicating liquor") *and* "Yes," to the question relating to the uncharged alternative (having "an alcohol concentration of 0.08 or higher"). CP at 51.

At sentencing, the parties disputed Frieday's offender score. The State wanted to include in Frieday's criminal history three prior Oregon driving under the influence of intoxicants (DUII) convictions from 1998, 2003, and 2016. Specific to Frieday's 1998 Oregon DUII conviction, Frieday admitted in his plea statement to "driving a car after [he] had consumed alcohol and the alcohol affected [his] abilities." CP at 101. And for Frieday's 2016 Oregon conviction, Frieday admitted that "on May 7, 2016, [he] drove a car on a public street while impaired by alcohol."[4] CP at 105.

Frieday objected to the inclusion of these Oregon convictions, arguing that they were not legally or factually comparable to a Washington offense. Frieday based his argument, in part, on interpretations of statutory language by Oregon courts. The State responded that the elements of

---

[4] In this appeal, Frieday does not challenge the inclusion of his 2003 conviction in his offender score and, thus, his statement on that plea statement is not relevant.

the Oregon and Washington statutes were nearly identical and that court interpretations of legal elements should not be included in a comparability analysis.

After assessing the Oregon and Washington statutes and the admitted facts from Frieday's guilty plea statements, the trial court found that all three of Frieday's prior Oregon DUII convictions were factually comparable and included them in Frieday's offender score. Based on a total offender score of 8, the trial court sentenced Frieday to 53 months of confinement—a sentence at the low end of the standard sentencing range.

Frieday appeals.

ANALYSIS

In his opening brief, Frieday makes the following arguments: (1) the trial court erred by instructing the jury on an uncharged felony DUI alternative, (2) the trial court abused its discretion in denying Frieday's motion to sever the ignition interlock charge from the felony DUI charge, and (3) the trial court erred by including two of Frieday's out-of-state convictions in his offender score because the offenses were not comparable to a Washington offense.

Following a 2024 United States Supreme Court decision, *Erlinger*, Frieday filed a supplemental brief, making two additional arguments related to his out-of-state convictions—that the trial court violated Frieday's Fifth and Sixth Amendment rights when it, and not a jury, decided the factual comparability of his prior convictions, and that the State violated Frieday's constitutional right to notice of any allegation that would increase his sentence (when it did not inform Frieday in the information that it sought to have his out-of-state convictions included in his offender score).

We address each argument in turn.

I.  UNCHARGED ALTERNATIVE

Frieday argues that the trial court erred when it instructed the jury on an uncharged alternative and that he was prejudiced by the error.  The State concedes that the trial court erred, but argues that the error was harmless.  We agree with the State.

A defendant has a constitutional right to be informed of the charges that they will face at trial.  *State v. Brewczynski*, 173 Wn. App. 541, 549, 294 P.3d 825, *review denied*, 177 Wn.2d 1026 (2013).  When a statute sets forth several alternatives by which a crime can be committed, " 'the charging document may charge none, one, or all of the alternatives, provided the alternatives charged are not repugnant to one another.' "  *State v. Sanchez*, 14 Wn. App. 2d 261, 267, 471 P.3d 910 (2020) (internal quotation marks omitted) (quoting *State v. Chino*, 117 Wn. App. 531, 539, 72 P.3d 256 (2003)).  But when the State elects to charge only one of the alternatives, it is error for the trial court to instruct the jury that it may consider other ways or means by which the crime could have been committed because the defendant must be informed of the charges in order to prepare a proper defense.  *Id.*

The State has the burden to prove that this type of error was harmless.  *In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 536, 309 P.3d 498 (2013).  "An erroneous instruction given on behalf of the party in whose favor the verdict was returned is presumed prejudicial unless it affirmatively appears that the error was harmless."  *State v. Bray*, 52 Wn. App. 30, 34-35, 756 P.2d 1332 (1988).  An erroneous instruction stemming from an uncharged alternative may be harmless if other instructions potentially cured the error by limiting the crime to the charged alternative.  *Sanchez*, 14 Wn. App. at 267.

DUI has several potential alternatives. For example, felony DUI can be proved if the person driving is "under the influence of or *affected by* intoxicating liquor, cannabis, or any drug." RCW 46.61.502(1)(c) (emphasis added).[5] But DUI also can separately be proved if the person driving a car "has, within two hours after driving, an alcohol concentration of 0.08 or higher as shown by analysis of the person's breath or blood." RCW 46.61.502(1)(a).

Here, as noted above, the information charging Frieday with felony DUI included only one of these alternatives—being "under the influence of or affected by intoxicating liquor or any drug . . . ." CP at 5. But the "to convict" jury instruction also included an uncharged alternative regarding the specific blood alcohol level of 0.08. The State concedes this was error.

Frieday contends this error was not harmless. Frieday argues that the jury could have convicted him based on the uncharged alternative because none of the jury instructions clearly limited the jury's consideration solely to the charged alternative. The State responds that there was no possibility that the jury impermissibly convicted Frieday on the uncharged alternative instead of the charged alternative, relying on *State v. Nicholas*, 55 Wn. App. 261, 273, 776 P.2d 1385, *review denied*, 113 Wn.2d 1030 (1989).

In *Nicholas*, the State charged the defendant with first degree robbery while armed with a deadly weapon. *Id.* at 262-63. The charging document was limited to this alternative ("armed with a deadly weapon"); the charging document did not specifically allege another possible alternative—that the defendant *displayed what appeared to be* a deadly weapon. *Id.* at 272. But

---

[5] Former RCW 46.61.502 (2017) was in effect at the time Frieday committed the offense, but we cite to the current version of the statute because the language of the relevant portion of the statute has not meaningfully changed.

later at trial, the trial court erroneously instructed the jury on both alternatives. *Id.* at 272-73. Nevertheless, the *Nicholas* court held the error was harmless, pointing to the jury's answer to a special verdict form. *Id.* at 273. Because the jury found by special verdict that the defendant was armed with a deadly weapon at the time the crime was committed (the charged alternative) and because the jury was instructed that it had to be unanimous beyond a reasonable doubt, the court reasoned that there was no possibility that the jury impermissibly convicted the defendant on the uncharged alternative. *Id.*

Applying *Nicholas* to the facts of Frieday's case, the State argues that there was no possibility that the jury convicted Frieday based on the uncharged alternative instead of the charged alternative. The State points out that the jury answered, "Yes," to the special verdict form that asked whether Frieday was affected by intoxicating liquor (the charged alternative) and that the trial court separately instructed the jury that the State had to prove Frieday was affected by alcohol beyond a reasonable doubt. (The State also adds that the jury is presumed to follow the trial court's instructions.)

We agree that the trial court's error was harmless. Based on the jury instructions and verdict forms, the jury clearly convicted Frieday based on the charged alternative. Similar to *Nicholas*, the special verdict form specifically asked the jury to answer a direct question about the charged alternative, namely whether Frieday was under the influence of or affected by intoxicating liquor or any drug. And the jury answered the question, "Yes." CP at 51. The trial court also instructed the jury that it had to unanimously be satisfied beyond a reasonable doubt that "yes" was the correct answer. CP at 80. It is true that there was a separate question about the uncharged alternative that was also answered, "Yes," by the jury. CP at 51. But we presume that the jury

12

follows the trial court's instructions and that it was unanimous about the charged alternative. *State v. Clark*, 187 Wn.2d 641, 654, 389 P.3d 462 (2017). In light of these circumstances, the jury clearly convicted Frieday based on the charged alternative. Thus, the State has met its burden to demonstrate that the error was harmless.

II. SEVERANCE

Frieday next argues that the trial court abused its discretion in denying Frieday's motion to sever the ignition interlock violation offense from the felony DUI offense. We disagree.

A. LEGAL PRINCIPLES

Two or more criminal offenses of similar character may be joined in one trial. CrR 4.3(a). However, the trial court may sever offenses if it determines that severance "will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). A defendant seeking to sever offenses must demonstrate "that a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." *State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990). "[A]ny residual prejudice must be weighed against the need for judicial economy." *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994).

To determine whether the potential for prejudice requires severance, a trial court must consider four factors: (1) the strength of the State's evidence on each count, (2) the clarity of defenses as to each count, (3) the court instructions to the jury to consider each count separately, and (4) the admissibility of evidence of the other charges even if not joined for trial. *Id.*

We review a trial court's denial of a defendant's motion to sever offenses for an abuse of discretion. *State v. Bluford*, 188 Wn.2d 298, 305, 393 P.3d 1219 (2017). A trial court abuses

discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Borboa*, 157 Wn.2d 108, 121, 135 P.3d 469 (2006).

B. APPLICATION

Frieday argues that he was prejudiced by the trial court's refusal to sever the charges. He contends that with the inclusion of the ignition interlock charge, the jury could have inferred that he was predisposed to driving drunk and committing DUIs. Frieday addresses some of the *Russell* factors by contending (1) the State's evidence for the DUI charge was weak, (2) the jury instructions did not cure the resulting prejudice, (3) the requirement that Frieday have an ignition interlock was not cross-admissible for his DUI count, and (4) the concern for judicial economy was minimal because separate trials for these types of charges would not be burdensome. (Frieday does not address the *Russell* factor pertaining to the "clarity of defenses.")

We see the application of the *Russell* factors differently. With respect to the first factor—a review of the record shows that the State presented overwhelming evidence on both the felony DUI and the ignition interlock violation charges. For the felony DUI charge, the trooper testified that Frieday crossed into the lane of oncoming traffic and failed to stop for more than a full minute despite the trooper activating his lights and sirens. When Frieday finally did stop, the trooper testified that Frieday stumbled towards him, had bloodshot watery eyes, and smelled like alcohol. The trooper also explained that Frieday declined to take field sobriety tests and also refused to take a breath test.[6] Based on the trooper's training, experience, and observations of Frieday throughout

---

[6] A defendant's refusal to provide a breath sample may be used as evidence of guilt at trial. *State v. Baird*, 187 Wn.2d 210, 213, 386 P.3d 239 (2016); RCW 46.20.308(2)(b).

this encounter (and supported by a transcript of the dashboard camera's audio), the trooper opined that Frieday was "obviously intoxicated." VRP at 349. And the forensic scientist testified that the toxicology test showed that Frieday's blood alcohol level was 0.21.[7]

Not only was the State's evidence strong on the felony DUI charge, it was also strong with respect to the ignition interlock violation charge. The trooper testified that he directly observed Frieday driving without an ignition interlock device and that Frieday was required to have the device installed. This first *Russell* factor supports joinder. *See Bythrow*, 114 Wn.2d at 721-22 ("When the State's evidence is strong on each count, there is no necessity for the jury to base its finding of guilt on any one count on the strength of the evidence of another.").

With respect to the second *Russell* factor, Frieday's defenses as to each count at trial did not appear to be conflicting (and Frieday makes no argument to the contrary). Frieday's defense of the felony DUI charge was straightforward—that the State had failed to carry its burden. And Frieday failed to present much of a defense to the ignition interlock charge (his counsel suggested during closing argument he was "not gonna talk a whole lot about that" charge). VRP at 411. As a result, the risk of juror confusion was very low, making this *Russell* factor supportive of joinder as well. *Russell*, 125 Wn.2d at 64 (explaining that risk of joinder causing jury confusion is very small where the defense as to each charge is the same).

For the third *Russell* factor, the trial court appropriately instructed the jury to consider each count separately and that a verdict on one count did not control the verdict on any other count.

---

[7] An analysis of blood or breath sample "show[ing] an alcohol concentration above 0.00 may be used as evidence that a person was under the influence of or affected by intoxicating liquor or any drug in violation of subsection (1)(c) . . . ." RCW 46.61.502(4)(a).

With *Russell*'s fourth factor, the cross-admissibility of evidence of the other charges, Frieday has his strongest argument. As the State concedes, the evidence of felony DUI and the ignition interlock violation would not be cross-admissible. However, this factor is not dispositive. *See Bluford,* 188 Wn.2d at 315 ("The mere fact that evidence is not cross [-] admissible does not automatically preclude joinder.").

In the end, three out of the four *Russell* factors weigh in favor of joinder, which suggests the trial court's decision was reasonable. This is especially so when the evidence was as strong as it was on each count. Moreover, there are other reasons to believe the potential prejudice from the ignition interlock charge was not as great as Frieday claims. The jury was already being instructed (accompanied by a limiting instruction) about the predicate offenses that elevated the DUI count to a felony, albeit by reference to the specific statutory provisions. Still, given the jury's access to this information about the predicate offenses, additional information about the ignition interlock count would have been only modestly more prejudicial. And *any* prejudice would, of course, require the jury to disregard the instructions of the trial court to view each count in isolation (and we presume juries follow instructions). *See Clark*, 187 W.2d at 654. After considering all of the *Russell* factors, we cannot say that the potential for prejudice required severance. *See* 125 Wn.2d at 63. Severing these charges, according to Frieday, would have caused only a small impact to judicial economy, but the prejudice from their joinder was smaller still. Accordingly, Frieday has not shown that the joinder of the two offenses in his trial was "so manifestly prejudicial as to outweigh the concern for judicial economy." *Bythrow*, 114 Wn.2d at 718.

Thus, under these circumstances, Frieday has failed to show that the trial court's decision to deny severance was unreasonable. We acknowledge an equally reasonable decision by the trial

court could have been to sever the ignition interlock charge, but we "need not agree with the trial court's decision for us to affirm that decision. We must merely hold the decision to be reasonable." *State v. Lile*, 188 Wn.2d 766, 782, 398 P.3d 1052 (2017). We hold that the trial court did not abuse its discretion in denying Frieday's motion to sever the felony DUI and ignition interlock charges.

III.  COMPARABILITY

Frieday next argues that the trial court erred by sentencing him with an incorrect offender score. He contends that the trial court wrongfully included his prior Oregon DUII convictions from 1998 and 2016 in his offender score when those convictions were not comparable to a Washington offense. We disagree.

A.  LEGAL PRINCIPLES

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the trial court uses the defendant's prior convictions to determine an offender score, which (along with the seriousness level of the current offense) establishes the defendant's presumptive standard sentencing range. *State v. Arndt*, 179 Wn. App. 373, 377, 320 P.3d 104 (2014). We review the trial court's calculation of a defendant's offender score de novo. *State v. Olsen*, 180 Wn.2d 468, 472, 325 P.3d 187 (2014).

When the defendant has an out-of-state conviction, the trial court must determine whether the out-of-state offense is comparable to a Washington offense before it can be used for the defendant's offender score. *See In re Pers. Restraint of Canha*, 189 Wn.2d 359, 367, 402 P.3d 266 (2017). When evaluating comparability, we apply a two-part test. *Olsen*, 180 Wn.2d at 472. First, we determine if the offenses are legally comparable by comparing their elements. *Id.* Legal comparability exists when the out-of-state offense is the same or narrower than the Washington

17

offense. *Id.* at 472-73. If the offenses are legally comparable, our analysis ends and the out-of-state offense may be included in the defendant's offender score. *Canha*, 189 Wn.2d at 367.

If the offenses are not legally comparable, such as when the out-of-state offense is broader than the Washington offense, we determine whether the offenses are factually comparable by deciding if "the defendant's conduct would have violated a Washington statute." *Id.* In assessing factual comparability, we can consider only those facts in the out-of-state proceeding that were proved to a trier of fact beyond a reasonable doubt or to which the defendant admitted or stipulated. *Id.* The State has the burden to prove the comparability of an out-of-state conviction. *Olsen*, 180 Wn.2d at 472. If an out-of-state conviction involves an offense that is neither legally nor factually comparable to a Washington offense, the conviction may not be included in the defendant's offender score. *See State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007).

B. APPLICATION

Friday argues that the trial court wrongfully included in his offender score two of his prior Oregon DUII convictions, which are neither legally nor factually comparable. First, he argues the Oregon convictions are not legally comparable because Oregon's statute is broader than Washington's statute. Second, he argues that his Oregon convictions are not factually comparable because neither of his guilty plea statements would constitute an admission to conduct that would constitute a Washington DUI.

For legal comparability, we start by comparing the Oregon DUII statute with the Washington DUI statute. In Oregon, one of the ways that a person commits DUII is by driving a vehicle while the person "[i]s under the influence of intoxicating liquor or a controlled substance."

Former OR. REV. STAT.§ 813.010(1)(b) (1991).[8] The Washington DUI statute in effect in 1998 includes very similar language and provides that a person is guilty of DUI for driving while "under the influence of or affected by intoxicating liquor or any drug." Former RCW 46.61.502(1)(b) (1994).[9]

Despite the similar language of the statutes, we have previously observed that Washington and Oregon courts interpret the phrase "under the influence" in the DUI statutes differently. *Arndt*, 179 Wn. App. at 385-87. In *Arndt*, this court noted that Oregon focuses solely on whether a person's mental or physical faculties are impaired, while Washington requires at least an inference that the person's ability to drive a car is lessened "in an appreciable degree." *Id.* at 387. As a result, the *Arndt* court determined that the facts required to convict under the Oregon statute would not necessarily result in a conviction under the Washington statute, making the Oregon DUII statute not legally comparable to a Washington offense. *Id.* We see no persuasive reason to depart

---

[8] We cite to the version of the Oregon statute in effect at the time of Frieday's 1998 DUII conviction. Although the version of the statute in effect at the time of Frieday's 2016 DUII conviction was slightly different, the differences in language are not material to our analysis, so we refer to the version in effect at the time of his 1998 conviction. Compare former OR. REV. STAT. § 813.010(1)(b) (1991) ("[i]s under the influence of intoxicating liquor or a controlled substance"); with former OR. REV. STAT. § 813.010(1)(b) (2009) ("[i]s under the influence of intoxicating liquor, a controlled substance or an inhalant").

[9] We cite to the version of the Washington statute in effect at the time of Frieday's 1998 DUII conviction. Although the version of the statute in effect at the time of Frieday's 2016 DUII conviction was slightly different, the differences in language are not material to our analysis, so we refer to the version in effect at the time of his 1998 conviction. Compare former RCW 46.61.502(1)(b) (1994) ("under the influence of or affected by intoxicating liquor or any drug"); with former RCW 46.61.502(1)(c) (2013) ("under the influence of or affected by intoxicating liquor, marijuana, or any drug").

from *Arndt*'s conclusion that the crime of DUII in Oregon is not legally comparable to a Washington offense.[10]

The next step is to assess whether Frieday's two Oregon DUII convictions are factually comparable to a Washington offense. *See Canha*, 189 Wn.2d at 367. Frieday argues that his convictions are not factually comparable because his guilty plea statements do not admit to conduct that sufficiently matches what is required under the Washington DUI statute; that is, an admission that alcohol *affected his ability to drive* a motor vehicle. Frieday's arguments are unpersuasive.

With respect to Frieday's 1998 Oregon DUII conviction, Frieday's plea statement reads:

> I plead "GUILTY" and request the [c]ourt to accept my plea of "GUILTY" . . . on the basis of ME DRIVING A CAR AFTER I HAD CONSUMED ALCOHOL AND THE ALCOHOL AFFECTED MY ABILITIES ON AUG. 15, 1997.

CP at 101. Frieday essentially argues that with this statement he admitted only that his *general* abilities were affected by consuming alcohol, *not* that he admitted alcohol affected his *specific* ability to drive a car.

But Frieday's interpretation requires us to ignore the first half of the statement and focus only on the second half of the statement. In the first half of his statement, Frieday specifically

---

[10] The State invites us to revisit *Arndt* and decide whether judicial interpretations of statutory elements can defeat legal comparability of statutes containing identical elements. As the State points out, the *Arndt* court mentioned, but did not address, this issue. The State argues that sentencing courts should not have to "delve" into court interpretations of statutory elements to determine legal comparability because otherwise sentencing courts would need to get involved in "minitrials over prior convictions" and "flout the legislature's intent in creating a rough comparability scheme under the SRA." Br. of Resp't at 30-31 (internal quotation marks omitted).

At least in the context of this case, the State exaggerates the consequences of considering Oregon's interpretation of its own DUII statute. The State fails to explain how the modest analysis undertaken by *Arndt* would create "minitrials over prior convictions" or flout legislative intent. Without any meaningful analysis, we decline the State's invitation to reject the reasoning of *Arndt*.

admits that he was "driving a car after . . . consum[ing] alcohol," and (without the insertion of a comma) he continues that "the alcohol affected [his] abilities." CP at 101. Reading the entire statement together, it strains common sense to say that when Frieday admitted that alcohol consumption "affected [his] abilities," he was talking about only his *general* abilities. CP at 101. The only reasonable conclusion given the full context of Frieday's statement is that when he referenced his "abilities," it was connected to the first part of the sentence—"driving a car." This admission clearly establishes felony DUI under the Washington statute (driving a car when his ability to do so was "affected by intoxicating liquor"). *See* former RCW 46.61.502(1)(b). Accordingly, the 1998 Oregon conviction is factually comparable. *See Canha*, 189 Wn.2d at 367.

The conclusion is the same for Frieday's 2016 Oregon DUII conviction. For this conviction, Frieday admitted that "[he] drove a car on a public street while impaired by alcohol." CP at 105. Frieday argues that although he admitted he was "impaired," he did not admit that his ability to drive was "affected," and it is impossible to conclude that his ability to drive a car was lessened by alcohol consumption because "impaired" is undefined. Frieday exaggerates the differences of the words used. "Impair" is defined as "to make worse," "diminish in quantity, value, excellence, or strength," "do harm to," and "damage, lessen." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1131 (2002). There is simply no daylight between this definition and being "affected by" alcohol. Thus, Frieday's 2016 Oregon conviction is factually comparable because Frieday's admitted conduct would have violated the Washington DUI statute. *See Canha*, 189 Wn.2d at 367.

Because Frieday's two prior Oregon DUII convictions are factually comparable to a Washington offense, the trial court did not err in including them in Frieday's offender score.

IV. SUPPLEMENTAL ASSIGNMENTS OF ERROR

Based on a recent case from the United States Supreme Court, *Erlinger*, Frieday filed a supplemental brief that raises two additional arguments related to his prior convictions from Oregon. First, Frieday argues that he has a right to a jury determination of the factual comparability of his prior convictions. And because the trial court, and not a jury, decided the factual comparability of his prior convictions, Frieday argues that his Fifth and Sixth Amendment rights were violated. Second, Frieday relatedly argues that the State violated his constitutional right to notice of any allegation that would increase his sentence. He claims that the State was required to inform him in the charging document that it sought to have his out-of-state convictions included in his offender score. The State argues that we should not review these arguments because Frieday, after not raising the issues below, fails to address RAP 2.5(a) in his supplemental brief.

A. WAIVER

In general, appellate courts will not consider issues raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). This principle is embodied in RAP 2.5(a), which was adopted to encourage " 'the efficient use of judicial resources.' " *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011) (quoting *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)). The rule provides appellate courts with discretion to refuse to review any claim of error which was not raised in the trial court. RAP 2.5(a). This ensures that the trial court has the opportunity to correct any errors, "thereby avoiding unnecessary appeals." *Robinson*, 171 Wn.2d at 304-305. This means that in order to preserve evidentiary issues for appeal, trial counsel must

generally object at the time the evidence is offered. *See State v. O'Hara*, 167 Wn.2d 91, 100, 217 P.3d 756 (2009).

A notable exception is that a party can raise an error for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. J.W.M.*, 1 Wn.3d 58, 90, 524 P.3d 596 (2023). An error is manifest under RAP 2.5(a)(3) if the defendant can show actual prejudice, demonstrated by a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " *J.W.M.*, 1 Wn.3d at 91 (alteration in original) (internal quotation marks omitted) (quoting *O'Hara*, 167 Wn.2d at 99). In determining whether the defendant has established actual prejudice, the error must be "so obvious . . . that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 100. The defendant has the burden of demonstrating manifest constitutional error. *State v. Schlenker*, 31 Wn. App. 2d 921, 945, 553 P.3d 712 (2024) ("The demands of manifest constitutional error shift the burden of showing prejudice to the accused.").

When the defendant raises a new argument for the first time on appeal they must generally address RAP 2.5(a) in their briefing. Otherwise the issue is considered waived. *See State v. Lindsey*, 177 Wn. App. 233, 247, 311 P.3d 61 (2013) (declining to address issue raised for the first time on appeal where defendant failed to address any of the RAP 2.5(a)(3) exceptions), *review denied*, 180 Wn.2d 1022 (2014); *State v. Knight*, 176 Wn. App. 936, 951, 309 P.3d 776 (2013) (declining to address double jeopardy jury instruction challenge where defendant failed to make any showing that the alleged error was manifest), *review denied*, 179 Wn.2d 1021 (2014).

Here, the State is correct that Frieday raises these issues for the first time on appeal and fails to discuss or analyze the application of RAP 2.5(a). However, notwithstanding that Frieday

should have discussed the application of RAP 2.5(a), the potential relevance of new United States Supreme Court jurisprudence is sufficiently important enough for us to exercise our discretion to reach his arguments.  *See* RAP 1.2(c).

B.  *ERLINGER* IS INAPPLICABLE

The United States Supreme Court has interpreted the Sixth Amendment right to a jury trial broadly.  *See Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).  In *Apprendi*, the Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" in order to comply with the Sixth Amendment right to a jury trial.  *Id.*  But, according to *Apprendi*, "the fact of a prior conviction" is not included in this requirement.  *Id.*  Our Supreme Court has similarly held that where a sentence is increased because of prior convictions, the fact of those prior convictions need not be found by a jury.  *Thiefault*, 160 Wn.2d at 418.  Consistent with this principle, our Supreme Court has also held that a judge, rather than a jury, may make the determination of whether a prior out-of-state conviction is comparable to a state offense.  *See id.* at 419.

Recently, the United States Supreme Court, in *Erlinger*, addressed the fact of a prior conviction under the Sixth Amendment's right to a jury trial in the context of a specific federal statute, the Armed Career Criminal Act (ACCA).  602 U.S. at 825.  Under the ACCA, a defendant can receive a greatly increased prison term if it is determined that they had three prior convictions for violent felonies or serious drug offenses that were "committed on occasions different from one another" (this determination is called an "occasions inquiry").  *Id.* at 825, 828 (internal quotation marks omitted).

In *Erlinger*, the defendant pleaded guilty to possession of a firearm and faced up to 10 years in prison. *Id.* at 825-26. However, the government decided also to charge the defendant under the ACCA, basing its request on previous burglary convictions that were committed over multiple days. *Id.* at 826. The defendant, hoping to avoid an increased sentence under the ACCA, argued that the burglaries occurred during a single criminal episode and requested that a jury, not a judge, make the determination. *Id.* at 827. The district court rejected the defendant's request for a jury determination and, instead, made a judicial determination that the multiple burglaries occurred on distinct occasions. *Id.*

The United States Supreme Court reversed, holding that the occasions inquiry is a fact specific task that the Fifth and Sixth Amendments to the United States Constitution require be determined by a jury. *Id.* at 834, 840, 849. But the *Erlinger* Court also expressly limited the scope of its holding. *Id.* at 837-38. Although the Court appeared to criticize prior precedent permitting a judge, rather than a jury, to find the fact of a prior conviction, it recognized that no party had asked it to revisit that holding. *Id.* The Court stated that "[w]hile . . . Mr. Erlinger was entitled to have a jury resolve *ACCA's occasions* inquiry unanimously and beyond a reasonable doubt, *we decide no more than that*." *Id.* at 835 (emphasis added).

Pointing to *Erlinger*'s criticism of the role of judges in finding the fact of prior convictions, Frieday argues that *Erlinger*'s holding is expansive and broadly applies to require a jury to determine whether a prior conviction is factually comparable. Frieday appears to suggest that factual comparability analysis, as it currently stands under Washington law, does not comply with *Erlinger*'s more narrow view of the fact of a prior conviction exception. He suggests that a comparability analysis goes beyond merely looking at admitted or proven conduct, but also

25

requires factual determinations of whether the defendant's out-of-state conduct would be criminalized by a Washington statute. This exercise undertaken by a judge, according to Frieday, exceeds the narrow scope of the fact of a prior conviction exception after *Erlinger*.

Frieday's argument rises or falls on whether *Erlinger*'s holding overrules existing Washington precedent that a jury is not required to determine the comparability of a defendant's prior out-of-state convictions to a Washington offense. This would clearly require interpreting *Erlinger*'s reach to extend beyond the ACCA. Division One recently addressed *Erlinger* and determined that "*Erlinger*'s holding is limited to resolving the ACCA's occasions inquiry" and does not overrule well-established Washington precedent. *State v. Anderson*, 31 Wn. App. 2d 668, 681, 552 P.3d 803 (explaining that *Erlinger*'s holding did not overrule our Supreme Court's precedent that the fact of a prior conviction can be determined by a judge even when used to increase a criminal sentence), *review denied*, 3 Wn.3d 1034 (2024).

We agree with *Anderson* that *Erlinger* should be limited to the ACCA and does not overrule existing Washington precedent. *Id.* As noted in *Anderson* and *Erlinger* itself, *Erlinger* did "no more" than impose a requirement that a jury resolve the ACCA's occasions inquiry. 602 U.S. at 835; 31 Wn. App. 2d at 681. And Frieday fails to persuasively demonstrate how a determination about comparability is analogous to the "occasions inquiry" under the ACCA. Thus, we conclude that *Erlinger* does not overrule our state's precedent that comparability is not required to be decided by a jury.

Frieday's second supplemental argument is also rooted in his interpretation of *Erlinger*. Frieday argues that that the State violated his constitutional right to notice of any allegation that would increase his sentence by not informing him in the charging document that it sought to have

his out-of-state convictions included in his offender score. Friday's argument is premised on his incorrect assumption that factual comparability no longer falls within the scope of the "fact of a prior conviction" exception because of *Erlinger*. However, as noted above, *Erlinger* did not change Washington law with respect to comparability or the fact of the prior conviction exception. *Anderson*, 31 Wn. App. 2d at 681. It follows, then, that the State was not obligated to inform Friday in the charging document that it would seek to have his out-of-state convictions included in his offender score.

In short, Friday's two supplemental arguments fail.

## CONCLUSION

We reject Friday's arguments and affirm.

PRICE, J.

We concur:

LEE, P.J.

GLASGOW, J.